RADIO CORPORATION OF AMERICA, Plaintiff-Counter-Defendant,

v.

The RAULAND CORPORATION and Zenith Radio Corporation, Defendants-Counter-Claimants,

Zenith Radio Corporation and The Rauland Corporation, Cross-Claimants (Radio Corporation of America, General Electric Company, and Western Electric Company, Inc., Cross-Defendants).

Civ. A. No. 48 C 1818.

United States District Court
N. D. Illinois, E. D.
Aug. 10, 1955.

See, also, D.C., 16 F.R.D. 160.

---

1. United States v. Peace, D.C.S.D.N.Y., 16 F.R.D. 423.

**442**

Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., Johnston, Thompson, Raymond & Meyer, Chicago, Ill., for Radio Corporation of America.

Joseph S. Wright, Chicago, Ill., Thomas C. McConnell, Chicago, Ill., for Zenith and Rauland.

Sidley, Austin, Burgess & Smith, Chicago, Ill., for Western Elec. Co.

Hamilton K. Beebe, Herman L. Taylor and Cyrus Mead, III, Chicago, Ill., Albert C. Bickford and Thomas Thatcher, New York City, for General Electric Co.

IGOE, District Judge.

Pursuant to an order of this Court entered on December 17, 1954, cross-defendant RCA was required to produce certain documents relevant to the treble damage cross-claim of Zenith Radio Corporation and The Rauland Corporation.

During the course of pre-trial depositions it appeared that RCA was withholding an undisclosed number of documents in the following categories:

1.  Documents allegedly protected by the attorney-client privilege.

    Under the claimed protection of this legal privilege, RCA is refusing to produce documents or give evidence relating to:

    (a) Communications to and from so-called outside counsel;

    (b) Communications to and from so-called inside or house counsel;

    (c) Communications to and from directors, officers or employers of RCA and the Legal Departments of General Electric, Westinghouse, American Telephone and Telegraph Company, "and others".

2.  Documents relating to negotiations concerning agreements which were allegedly "approved" by the so-called consent decree of 1932.

3.  Documents relating to events occurring after February 1954, the date of the filing of the amended counter-claim herein.

4.  Documents containing "competitive and confidential information".

5.  Documents which allegedly are not relevant to the issues, including documents relating to "manufacturing matters and broadcasting matters and matters affecting 'point to point' communications".

The only ground that has possible merit is the claim of attorney-client privilege relating to communications allegedly to and from outside counsel and communications to and from inside or house counsel.

The principal of attorney-client privilege is clear in the abstract. Difficulty often arises, as in this case, where the principle is invoked in connection with complicated business transactions in which lawyers often perform in dual roles as attorneys on the one hand and as negotiators and businessmen on the other.

Cross-claimants point to the record as showing that the privilege is being wrongfully invoked in this instance to cover the activities of RCA lawyers who were in fact negotiators of the contracts and arrangements the legality of which is in issue. For example, cross-claimants quote the following testimony of David Sarnoff, Chairman of the Board of RCA, given in this cause:

"A. * * * There was no dearth of lawyers, I can tell you.

"Q. I can see there were quite a few around, and very good ones, too, apparently. A. This is an aside, if you will permit it. It has always been a question to me why all these contracts which were all written by lawyers, why the lawyers are not on the witness stand to answer with respect to them.

"Q. That is a great mystery to me, but your counsel do not want that to happen. A. I am willing to yield the seat to them. (Sarnoff Dep. p. 313.)

"Q. Was Neave handling the negotiations on behalf of all the interested parties or just RCA? A. Just RCA.

"Q. Do you know who the other counsel were who were dealing with the Attorney General on behalf of General Electric? A. I think for the Westinghouse it was Cravath, and for the General Electric I don't recall, but—oh, yes, I think they had White & Case, and we finally—I had independent counsel when it came to making the trade with General Electric and Westinghouse * * *". (Sarnoff Dep. pp. 312–313.)

"A. The lawyers apparently succeeded in getting themselves into the top positions as negotiators in all these companies. The negotiations were carried on by lawyers. They may have been carried on in their capacity as businessmen, but they were lawyers nevertheless.

"Q. They sort of left their footprints all over this picture, didn't they? A. I should think so, yes." (Sarnoff Dep. p. 319.)

Cross-claimants argue that communications between businessmen are not shrouded by legal privilege because one or both of the parties happen to be members of the bar. Cross-claimants further contend that the communications in question were made in furtherance of the alleged unlawful conspiracy and therefore cannot be privileged.

As to the other objections, it is sufficient to say that the attorney-client privilege does not extend to communications between directors, officers, or agents of different corporations, or to negotiations between such corporations which are made or conducted by men who happen to be members of the bar. Neither does it extend to communications made by a client to his attorney with the understanding that the information is to be imparted to a third party. In re Ruos, D.C., 159 F. 252, 257; Rediker v. Warfield, D.C., 11 F.R.D. 125, 127; Wigmore on Evidence, Third Ed., Vol. VIII, Sec. 2317.

To hold otherwise would lead to the ridiculous result that conspiracies formed and conducted by lawyers on behalf of corporations would be beyond the reach of the law. The attorney-client privilege is narrow. As Wigmore says:

"The privilege is designed to secure objective freedom of mind for the client in seeking legal advice (ante, sec. 2291). It has no concern with other persons' freedom of mind, nor with the attorney's own desire for secrecy in his conduct of

**444**

a client's case. It is therefore not sufficient for the attorney, in invoking the privilege, to state that the information came somehow to him while acting for the client, nor that it came from some particular *third person* for the benefit of the client."

■■ As to the documents with respect to which the attorney-client privilege has been waived by disclosure to any other person, or where the attorney was acting in the capacity of negotiator, or in any capacity other than advising a client on legal matters, the documents will be produced to cross-claimants. As to other documents withheld by reason of the attorney-client privilege, they will be produced to the Court, which will pass upon the question of privilege as to each such document.

■■ Nor is there any authority for concealing documents relating to negotiations leading to agreements that are referred. to in the consent decree of 1932. They should be produced. Cross-claimants were in no sense parties to the consent decree and are not bound or affected by it in any way.

Counsel for cross-claimants are not pressing for documents relating to communications with the Government during the negotiation of the consent decree itself. These need not be produced.

■ As to documents being withheld on the ground that they relate to matters occurring after the filing of the amended counterclaim herein, it is sufficient to say that cross-claimants ask for injunctive relief as well as for damages. To determine the need for, or the propriety of, injunctive relief it is obvious that the Court at some time must be informed of the current activities of cross-defendants. It would serve no useful purpose to delay disclosure of facts occurring after the filing of the amended counterclaim. Documents withheld on this ground should be produced.

■ Documents being withheld on the ground that they contain "confiden-tial and competitive information" should also be produced. To some degree, most documents in the files of a corporation contain "confidential and competitive information". This fact does not justify withholding evidence on the issues as framed by the parties, which necessarily involves matters they would otherwise prefer to keep "confidential".

In ruling on a somewhat similar objection, the Court in Simonin's Sons v. American Can Co., D.C., 30 F.Supp. 901, 903, aptly said:

"The principal objection from the defendant's standpoint is that they (the interrogatories) give the plaintiff information as to its business dealings with others than the plaintiff. This, I think, cannot be helped."

■ Finally, the documents being withheld by RCA on the ground that they are irrelevant because they relate to "point to point" communications, broadcasting or other phases of the electronics business, should be produced. Cross-claimants allege a world-wide conspiracy to monopolize electronics patents and to divide the electronics business into "fields" as well as territories. Evidence relating to the over-all conspiracy alleged is relevant. It is not the function of RCA counsel to rule with finality on the relevancy or irrelevancy of documents in their exclusive possession and thereby to deprive both Court and opposing counsel of an opportunity to evaluate their contentions. If, in fact, any of the withheld documents are not relevant as is claimed, they will not be admitted in evidence at the trial of the cause. The test of relevancy in discovery is in no way as strict as that which governs admissibility of evidence at the trial. 4 Moore's Federal Practice, 2nd Ed., page 2459.

■ Early after the promulgation of the Federal Rules of Civil Procedure, 28 U.S.C.A., it was effectively said in Beler v. Savarona Ship Corporation, D.C., 26 F.Supp. 599:

445

"The requirement of materiality does not * * * compel the person seeking discovery definitely to prove materiality before being entitled to a discovery. Such an interpretation of the rule would place upon it a narrow construction which would severely limit the bounds of the discovery procedure. It might compel a party to know what was in the documents before he had seen them. One of the basic purposes of the new Rules is to enable a full disclosure of the facts so that justice might not move blindly."