GARY O'CONNOR ET AL. *v.* DORY CORPORATION ET AL.

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and LONGO, Js.

Argued October 6—decision released December 20, 1977

*Sidney Vogel*, for the appellants (defendants).
*John A. Mettling*, for the appellees (plaintiffs).

COTTER, J. The plaintiffs, owners of a two-acre tract of land in New Milford, brought suit to recover damages to their property allegedly caused by a change in the volume and course of surface waters which naturally flow onto their land from the property of the defendants. The following facts are not in dispute. A pond or pool approximately sixty feet long and thirty feet wide which was lined with a concrete liner was located on the northern section of the plaintiffs' property. It was used for swimming in the summer and as a skating rink in the winter. Water in the pool flowed from two

springs on neighboring property, and one of the springs was on the defendants' property, adjoining that of the plaintiffs. On land adjacent to the defendants' property, there was an old concrete cistern which was filled with water from two springs. Since those properties were located on a higher level than the plaintiffs' property, water from the cistern ran through a culvert under a wood road on the defendants' property and traveled downgrade through a swale or swamp to the property of the plaintiffs and down to their pool.

Intending to develop his property, the defendant, Charles A. Antonelli, organized the defendant, Dory Corporation, to which he quitclaimed his 25.25 acres of land in August of 1969. The defendant Antonelli was advised of possible problems in building on his lots unless some method of controlling ground or surface waters was found; as a result, on December 4, 1969, to determine whether there were additional springs in those lots, diversion ditches were constructed to carry water off the property. Although the plaintiffs' pool had been adequately filled with water and free of any silt prior to this time, in December of 1969 the flow of water to the pool was cut off by the digging of the interceptor ditch on the defendants' land which caused the water in the plaintiffs' pool to become stagnant. Additionally, in the following spring, "excessive silting took place in the plaintiffs' pool from excessive runoff of water from the defendants' land after the spring thaw." Since the summer of 1970, the plaintiffs have been unable to use their pool because it has been filled with silt.

The plaintiffs allege in the first count of their complaint that the defendants illegally interfered

with their property rights by changing the course and volume of the water which naturally flowed onto their property and in the remaining counts allege causes of action based on a private nuisance, trespass and negligence. From the evidence presented, the trial referee concluded that the diversion ditches which were constructed by the defendants caused a change in the volume and course of the water which naturally flowed to the plaintiffs' property and resulted in the plaintiffs' pool being filled with silt and vegetation; the court rendered judgment for the plaintiffs in the amount of $8000 on the first count of their complaint, from which the defendants have appealed.

In their assignment of errors, the defendants attack the judgment claiming that it was erroneously based upon facts found but not raised by the pleadings. The gravamen of this claim is the defendants' assertion that the basic allegations in the first count of the complaint indicated that the damage was caused by the increased flow of waters onto the plaintiffs' land, while the memorandum of decision refers to "both a change of course and a decrease in volume." In further support of their claim of inconsistency, the defendants also refer to a finding of the trial court which states: "In December of 1969, the flow of water to the pond was cut off . . . ." From the foregoing, the defendants challenge the judgment claiming that the plaintiffs are limited to the allegations in their complaint and cannot allege one cause of action and recover upon another. We find no material variation in the pleadings and proof as to the basic cause of action alleged in the first count upon which the plaintiffs prevailed. *Schaller* v. *Roadside Inn, Inc.,* 154 Conn. 61, 64–67, 221 A.2d 263. The allegations

in that count construed in a manner most favorable to the pleaders sufficiently state a cause of action which would establish that in the development of their adjacent land the defendants had altered the natural flow of water in such a manner as to change the volume of water flowing from their land and to discharge it in a manner different in volume or course upon, and to the detriment of, the plaintiffs' land. *Tide Water Oil Sales Corporation* v. *Shimelman,* 114 Conn. 182, 188, 158 A. 229; 78 Am. Jur. 2d, Waters §§ 10, 11.

Although the trial court found that in December of 1969 the flow of water to the plaintiffs' land was cut off, it also found that in the spring of 1970 silting occurred in the plaintiffs' pond as a result of the excessive runoff of water from the defendants' land after the spring thaw. The complaint specifically alleged that the plaintiffs' pool was damaged from, inter alia, the excessive accumulation of silt. Any ambiguity in the trial court's memorandum of decision is clarified by the finding which explicitly describes the cause of the silting as the increased water flow. "As between a memorandum of decision and a finding, the latter must always prevail." *Banks* v. *Adelman,* 144 Conn. 176, 180, 128 A.2d 534; *Silver* v. *Silver,* 170 Conn. 305, 307, 365 A.2d 1188. The judgment was based upon essential issues which were reasonably within the scope of the pleadings. *Malone* v. *Steinberg,* 138 Conn. 718, 721, 89 A.2d 213; *Spitz* v. *Abrams,* 128 Conn. 121, 123, 20 A.2d 616; Maltbie, Conn. App. Proc. § 64.

Although the defendants attack a number of the trial court's findings as being made without evidence, they only brief the claim that the court erred

in refusing to find facts contained in their draft finding. Assignments of error which are not briefed are presumed to be abandoned. *Johnson* v. *Flammia,* 169 Conn. 491, 498, 363 A.2d 1048. The facts which the defendants seek to have added to the finding are neither admitted nor undisputed material facts which would require such a correction. Practice Book § 628. Facts are not admitted or undisputed merely because they are uncontradicted. *Walker* v. *Jankura,* 162 Conn. 482, 484, 294 A.2d 536.

The defendants also assign error in the ruling of the court admitting the testimony of the witness, Grant Herman, as to the value of the plaintiffs' property. It is admitted that Herman was a part-time real estate broker in the New Milford area. The defendants, however, challenge his testimony only on the ground that he was incompetent to testify as an expert because he was a former owner of the plaintiffs' and defendants' properties which he had sold to them. The plaintiffs' house had not been built on the property at the time of its purchase from Herman. Reasonable qualifications were established for the admission of the witness' testimony as to value and the objection raised concerning his former ownership of the property went to its weight rather than its admissibility. *Waldron* v. *Raccio,* 166 Conn. 608, 614, 353 A.2d 770. The qualification of an expert is in the discretion of the trial court and its decision will not be disturbed unless that discretion is abused or the error is clear and involves a misconception of the law. *State* v. *Castagna,* 170 Conn. 80, 90, 364 A.2d 200; 31 Am. Jur. 2d, Expert and Opinion Evidence, § 31. The defendants, for the first time, raise in their brief the claim that the plaintiff Gary O'Connor, one of the owners, testified as to his

asking price for the property. Since the defendants did not pursue an objection or take an exception to this testimony, or specifically assign it as error, it cannot be considered on appeal. Practice Book § 652; *Cottrell* v. *Connecticut Bank & Trust Co.*, 168 Conn. 119, 120, 358 A.2d 356.

The defendants' final claim of error relates to the trial referee's failure to view the premises. Before resting his case, counsel for the defendants moved that the court view the premises. There being no objection, the court remarked: "Well, I probably will view it. I will tell you when. Be within the next month." The court did not view the site, explaining in its finding that "conditions had changed to the extent that such a viewing would serve no useful purpose." The defendants claim that they had no knowledge of the court's decision not to inspect the property until the finding was filed, and that its failure to view the site deprived the defendants of "essential evidence in the prosecution of their case."[1]

In late 1969, Dory Corporation dug ditches on its property to determine the presence of springs and the feasibility of development. The plaintiffs brought suit in August, 1970. The case was tried in 1974. Thus the changes made and the damages claimed to have been suffered by the plaintiffs occurred almost four years before trial. "The test is whether a view is necessary or important in order to obtain a clearer understanding of the issues and to apply the evidence properly. 2 Wigmore, Evidence (3d Ed.) § 1162 et seq." *Dickson* v. *Yale University*, 141 Conn. 250, 256, 105 A.2d 463. The

---

[1] The defendants have failed to indicate exactly what "essential evidence" they were deprived of as a result of the court's decision.

court had full benefit of the testimony of several witnesses as to the condition and location of the property in addition to demonstrative evidence consisting of maps, sketches and photographs. The law is clear, and the defendants agree, that the decision to view the premises rests within the sound discretion of the court. *LaVoie* v. *Marshall,* 141 Conn. 681, 687, 109 A.2d 508; 76 Am. Jur. 2d, Trial, § 1247. The defendants contend, however, that error was committed when the court indicated that it would make such an inspection. In the course of the colloquy regarding the defendants' motion, the defendants' counsel remarked: "And I take it, if Your Honor does decide on a view, you'll communicate with us as to a date." The defendants now suggest, although the foregoing statement indicates otherwise, that the trial court was understood to have expressly granted the defendants' request.

The trial court stated that conditions had changed to the extent that a view would serve no useful purpose as the reason for its failure to inspect the premises. We have no way of knowing whether the court had in mind that the changes first started in 1969 which led to the allegations made in the cause of action dated August 5, 1970, and not tried until January and February of 1974, were considered too remote in time to be viewed some four years after the event. Although the defendants in their brief argue that there was no evidence to indicate a change in circumstances, they did not specifically assign as error this determination of the court. Since this court is not bound to consider any claimed errors on appeal which have not been specifically assigned; Practice Book § 652; *Raffile* v. *Stamford Housewrecking, Inc.,* 168 Conn. 299, 303, 362 A.2d 879; the question of the trial court's determination

that conditions had changed is not properly before this court. Under all the circumstances, the court did not abuse its discretion in failing to view the premises as requested. *LaVoie* v. *Marshall,* supra.

There is no error.

In this opinion the other judges concurred.