BLANCHE GOLDENBERG ET AL. *v.* CORPORATE AIR, INC., ET AL.

(11256)

SPEZIALE, C. J., HEALEY, PARSKEY, GRILLO and PICKETT, Js.

Argued December 1, 1982—decision released March 15, 1983

*James A. Trowbridge,* with whom were *Wesley W. Horton* and *Naomi A. Plakins,* for the appellants (named defendant et al).

*Arnold J. Bai,* with whom was *Garie J. Mulcahey,* for the appellee (defendant Avco Corporation).

PARSKEY, J.   This case presents a variation of the troublesome question whether private counsel in a civil law suit and his firm should be disqualified for his having consulted with an attorney who changed sides during the pendency of the litigation.

The disqualification issue arises incidentally out of a tragic aircraft accident that occurred at Brainard Field in Hartford on November 28, 1978 and that resulted in the death of the pilot and two passengers.   Multiple suits followed against various defendants among whom are Corporate Air, Inc. (Corporate Air), lessee and operator of the aircraft involved in the accident, and Avco Corporation (Avco), manufacturer of the two engines which powered the plane.   There is an adverse interest between Corporate Air and Avco because Avco contends that the accident resulted from operational or pilot error while Corporate Air contends that defective equipment manufactured by Avco caused the accident.

Avco's insurer with respect to claims arising out of the accident is United States Aviation Insurance Group (USAIG).   At the date of the accident and for two years thereafter one Joseph Flaherty was a staff attorney at USAIG who represented Avco in regard to its defense of any tort claims arising out of the crash.   He was given total access to all Avco records, documents, tests, correspondence and personnel to assist him in formulating that defense.

He not only was privy to all Avco's defense plans in regard to that accident, but he also, in great part, structured the defenses.

In 1981 Flaherty left USAIG and had gone to work for Peter J. McBreen and Company (McBreen), an accident investigation and insurance adjusting firm. McBreen represents the insurance underwriting company which insures Corporate Air in regard to this accident. Attorney William R. Moller represents Corporate Air in the several suits arising out of the accident. As an employee of McBreen, Flaherty has consulted with Attorney Moller in regard to this accident. There is no evidence that Moller knew of Flaherty's past relationships or that Moller acted improperly in any way. In response to a motion by Avco, the trial court nevertheless disqualified Moller and his office from representing Corporate Air in the several cases and rendered a further order designed to insulate Flaherty and his information from successor counsel.[1] This appeal followed.

There are three competing interests at stake in the disqualification of Moller: first, Corporate Air's interest in freely selecting counsel of its choice; second, Avco's interest in protecting its confidential information from disclosure to an adversary in the pending litigation; and third, the public's interest in the scrupulous administration of justice. In balancing these interests the trial court found that the interests of Avco and the public outweighed the interest of Corporate Air

---

[1] "The court orders that no information, idea, strategy, or technique that was derived either directly or indirectly from Flaherty shall be passed on to successor counsel either directly or indirectly and that successor counsel shall not communicate with Flaherty or with anyone to whom Flaherty has given any information, ideas, strategy or techniques in regard to the present action."

and therefore exercised its discretion in favor of disqualification. In reviewing the court's action we must not only accord every reasonable presumption in favor of the trial court's decision, but we also should hesitate to reverse unless an abuse of discretion is manifest or injustice appears to have been done. *State* v. *Jones,* 180 Conn. 443, 448, 429 A.2d 936 (1980). We conclude that, except for the scope of the order, the trial court's action falls well within the bounds of its discretionary authority.

Before reaching the question of whether Avco's interest in protecting its confidential information from disclosure has been jeopardized, it must first be determined that an attorney-client relationship existed between Avco and Flaherty. *State* v. *Jones,* supra, 449. "The practice of law consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces the giving of legal advice on a large variety of subjects and the preparation of legal instruments covering an extensive field. Although such transactions may have no direct connection with court proceedings, they are always subject to subsequent involvement in litigation. They require in many aspects a high degree of legal skill and great capacity for adaptation to difficult and complex situations. No valid distinction can be drawn between the part of the work of the lawyer which involves appearance in court and the part which involves advice and the drafting of instruments. The work of the office lawyer has profound effect on the whole scheme of the administration of justice. It is performed with the possibility of litigation in mind, and otherwise would hardly be needed." *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 234-35, 140 A.2d 863

(1958). The relationship between an insured and attorneys in the legal department of the insurer in respect to litigation against the insured involving the subject matter of the insurance is that of attorney and client, whether or not the insurer employs outside counsel to represent the insured in the law suit.

We begin our analysis with an examination of the relationship between Joseph Flaherty and Avco. The fact that Flaherty was house counsel for Avco's insurer did not preclude him from developing an attorney-client relationship with Avco in regard to the airplane crash litigation. Despite Corporate Air's insistence that Flaherty was acting merely as an adjuster or claims supervisor with respect to Avco rather than as an attorney, it is apparent from even a casual observation that Flaherty's professional footprints are all over Avco's product liability landscape. *RCA* v. *Rauland Corporation*, 18 F.R.D. 440, 443 (N.D. Ill. 1955). Not only was he given access to all Avco records, documents, tests and correspondence pertinent to the litigation, he was also privy to Avco's trial strategy. He participated in discussions designed to formulate Avco's trial plan and played an active role in structuring its defenses. His intimate knowledge of Avco's affairs received in the course of the attorney-client relationship subjected him to a fiduciary responsibility. *Fund of Funds, Ltd.* v. *Arthur Andersen & Co.*, 567 F.2d 225, 233 (2d Cir. 1977). Both house counsel and outside counsel are bound by the canons of professional responsibility. House counsel may not avoid the canons by claiming to be acting in some other capacity. *NCK Organization, Ltd.* v. *Bregman Ltd.*, 542 F.2d 128, 133 (2d Cir. 1976).

The disqualification dispute arose as a result of occurrences at a deposition taken in Pennsylvania in January, 1982, of an engineer employed by Avco at the time of the air crash. Flaherty was present at the deposition. Prior to attending the deposition, Flaherty requested and received permission to attend from John Considine, Flaherty's successor at USAIG. Considine informed Richard Small, who also had no objection. Small is the director of administration and legal officer at the Avco divisional headquarters at Williamsport, Pennsylvania. Corporate Air argues that, by consenting to Flaherty's attendance at the deposition, Avco waived the right to claim disqualification on the basis of presumed disclosure of confidential information. The short answer to Corporate Air's claim of waiver is that it was not raised before the trial court and therefore cannot be pursued before us on appeal. *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 72, 381 A.2d 559 (1977).

But even were we to overlook this serious deficiency and examine the merits of Corporate Air's waiver claim, the result would be the same. Waiver is the intentional relinquishment of a known right. Although waiver need not be express but may be implied from acts or conduct; *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 562, 316 A.2d 394 (1972); the facts and circumstances of this case are not such as would require us to find waiver as a matter of law. There is no evidence that prior to the deposition Avco had any reason to suspect that Flaherty would be disloyal to his fiduciary obligation to maintain Avco's confidences. Nor is there any evidence that Avco had any reason to believe that Flaherty's purpose in attending the

deposition was to lend assistance to or even to discuss the accident with Avco's adversary.

Canon 4[2] of the Code of Professional Responsibility (Code) imposes on counsel the obligation to preserve the confidences and secrets of a client. This canon embodies the admonition contained in Canon 6 of the former Canons of Professional Ethics against "the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed." *Emle Industries, Inc.* v. *Patentex, Inc.,* 478 F.2d 562, 570 (2d Cir. 1973). "An attorney should be disqualified pursuant to Canon 4 if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior litigation." *State* v. *Jones,* supra, 449. Where, as here, the change in sides occurs in the same litigation, the satisfaction of the substantial relationship test is self-evident.

Corporate Air does not seriously question that Flaherty could not change sides during the pendency of the airplane crash litigation without violating Canon 4. Flaherty did not merely change employers; he changed sides. One day he was assisting Avco in its defense; the next, he was helping Avco's adversary, Corporate Air. That

---

[2] Relevant to this appeal are the following sections of the Code of Professional Responsibility:

"EC 4-1: Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. . . ."

"DR 4-101 (B): Except when permitted under DR 4-101 (C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client. . . ."

Flaherty was tainted by the resultant conflict of interest is clear. The central question before us then is whether, by consulting with Flaherty, Moller also became infected.

Every client has a right to expect that his lawyer will not disclose his secrets.[3] To protect this right, courts will not inquire whether the lawyer has, in fact, used confidential information to the client's detriment because such inquiry would require the revelation of the very information the canon is designed to protect. *Motor Mart, Inc.* v. *Saab Motors, Inc.*, 359 F. Sup. 156, 157 (S.D. N.Y. 1973); *T.C. Theatre Corporation* v. *Warner Bros. Pictures, Inc.*, 113 F. Sup. 265, 269 (S.D. N.Y. 1953). Where the opportunity for disclosure of confidential information to an adversary is shown, the breach of confidence would not have to be proved; it is presumed in order to preserve the spirit of the Code. *Hull* v. *Celanese Corporation*, 513 F.2d 568, 572 (2d Cir. 1975).

It follows that, as a result of the consultations between Flaherty and Moller concerning the airplane accident, Moller was in a position to receive relevant confidences concerning Avco. This pos-

[3] "Now, it is the glory of our profession that its fidelity to its client can be depended on; that a man may safely go to a lawyer and converse with him upon his rights or supposed rights in any litigation with the absolute assurance that the lawyer's tongue is tied from ever disclosing it." *United States* v. *Costen*, 38 F. 24 (Cir. Ct. D. Colo. 1889).

"It is obvious that professional assistance would be of little or no avail to the client, unless his legal adviser were put in possession of all the facts relating to the subject matter of inquiry or litigation, which, in the indulgence of the fullest confidence, the client could communicate. And it is equally obvious that there would be an end to all confidence between the client and attorney, if the latter was at liberty or compellable to disclose the facts of which he had thus obtained possession." *Goddard* v. *Gardner*, 28 Conn. 172, 175 (1859).

sibility is sufficient to disqualify Moller. *Fund of Funds, Ltd.* v. *Arthur Andersen & Co.,* supra, 235. It is immaterial that Moller was unaware of Flaherty's past relationships or that he acted properly at all times. No person is immune from the spread of infection by reason of his good conduct or pure heart. Although it is unfortunate that Moller, through no fault of his own, must be precluded from representing Corporate Air, a client of long standing, in the present litigation, no other result consistent with the Code is appropriate.

Corporate Air's reliance on *Board of Education of New York City* v. *Nyquist,* 590 F.2d 1241 (2d Cir. 1979); *Fred Weber, Inc.* v. *Shell Oil Co.,* 566 F.2d 602 (8th Cir. 1977), cert. denied, 436 U.S. 905, 98 S. Ct. 2235, 56 L. Ed. 2d 403 (1978); and *Baglini* v. *Pullman, Inc.,* 412 F. Sup. 1060 (E.D. Pa. 1976), in support of its contention that disqualification of Moller is not called for in this case is misplaced. *Nyquist* involved a declaratory judgment action seeking a determination whether a school district was required to maintain male and female seniority lists for layoffs. The attorney, sought to be disqualified by female teachers, represented male teachers in the action. He was also general counsel for a teachers membership association which received financial assistance from a union which represented both male and female teachers and which provided free legal services to union members. He had never represented the female teachers. The court pointed out that there was no claim that male teachers had gained unfair advantage through access to privileged information about female teachers and no basis for a conclusion that the trial would be tainted by the attorney's representation of the male teachers. In *Fred Weber,*

*Inc.,* the ground for disqualification was that counsel for the plaintiff had represented a codefendant in a prior criminal antitrust prosecution against the movants in this proceeding. The claim was that, in the former proceeding, counsel had come into possession of confidential information of the movants during joint strategy conferences. Both the trial and appellate courts, after examining the movants' submissions in camera, found that the attorney had obtained no such information. In *Baglini,* the named defendant sought to disqualify the plaintiff's attorney because he had previously represented a third party defendant who had no objection to his representing the plaintiff in the instant action. In none of these actions was there a prior attorney-client relationship which would implicate Canon 4. Courts will not presume receipt of confidential information in the absence of such a relationship.

Corporate Air also cites *In re Airport Car Rental Antitrust,* 470 F. Sup. 495 (N.D. Cal. 1979). *Airport Car Rental* puts into sharp focus the troublesome problem involved in the vicarious disqualification of an attorney. In that case, the New York law firm of Philips, Nizer, Benjamin, Krim and Bron (Philips Nizer) was retained by Budget Rent A Car Systems, Inc. (Budget) to represent Budget as plaintiff in an antitrust action brought in the federal court in California against Hertz Corporation, Avis Rent A Car System, Inc., and National Rent A Car System, Inc. Thereafter, Pacific Auto Rental Corporation, doing business as Dollar Rent A Car Systems of Hawaii, Inc. (Pacific Auto) brought an antitrust suit in Hawaii against Budget and various other car rental companies. Because the federal court in Hawaii required local counsel,

Philips Nizer requested the law firm of Fujiyama,
Duffy, Fujiyama & Koshiba (Fujiyama) to asso-
ciate with it in the Hawaii action on behalf of
Budget. Unbeknown to Philips Nizer, a member
of Fujiyama had been consulted earlier by an
officer of Pacific Auto with respect to obtaining a
car concession at Honolulu International Airport.
Although the conference lasted no more than an
hour and a half and Pacific Auto was not billed by
Fujiyama for legal services, confidential informa-
tion of Pacific Auto was discussed. Subsequently
the two actions were consolidated in the federal
court in California. Pacific Auto moved to dis-
qualify Fujiyama and co-counsel Philips Nizer.
The court disqualified Fujiyama under Canon 4
and a comparable provision of the Rules of Pro-
fessional Conduct of the State Bar of California.
The court denied the motion to disqualify Philips
Nizer, reasoning that, there being no evidence that
Philips Nizer had received confidential informa-
tion from Fujiyama, to impute the knowledge of
Fujiyama to co-counsel or to presume that Philips
Nizer had received such information would be very
close to adopting a rule of automatic disqualifica-
tion of co-counsel. The court concluded that, in
the absence of actual impropriety, it would reflect
an overabundance of caution to disqualify Philips
Nizer under Canon 9[4] solely on the ground that the
New York firm's role as co-counsel to a disqualified
firm created an appearance of impropriety.

We need not decide whether Canon 9 is a suffi-
cient ground by itself to warrant disqualification
because we are not confronted with that problem
in this case. We are not unmindful that disqualifi-

[4] "A lawyer should avoid even the appearance of professional
impropriety."

cation frequently entails substantial prejudice to the client whose attorney is disqualified. We are also aware that motions for disqualification are often used for strategic purposes. See *Allegaert v. Perot,* 565 F.2d 246, 251 (2d Cir. 1977). Nor are we inclined to assume that the ethical obligations of the profession are borne so lightly by attorneys either as a class or individually that they are subject to being jettisoned as so much excess baggage if circumstances of the moment so dictate. Still, we cannot overlook the facts of this case. Even in *Airport Car Rental,* where the professional relationship between Pacific Auto and Fujiyama was both tenous and transitory, the court felt that relying on both Canons 4 and 9 it would not have exceeded the bounds of its permissible discretion if it chose to disqualify Philips Nizer. *In re Airport Car Rental Antitrust,* supra, 507. Thus, applying that standard here would not require reversal. When in addition we note the strong, deep and extensive professional relationship between Flaherty and Avco as well as the significant failure of Flaherty to alert Moller about such past relationship, for us to ignore the impact on Moller of Flaherty's violations of these two canons would be tantamount to ignoring the Code.

Finally, we address the scope of the trial court's order. To protect Avco's interest in its confidential information requires that Flaherty be quarantined. To the extent that the order provided Flaherty and successor counsel shall not communicate directly or indirectly with each other, it was justified. Beyond that, the restrictions imposed by the court could not be enforced without, at the same

time, severely and unnecessarily hampering Corporate Air's ability to defend itself in the product liability litigation.

There is error in the form of the judgment, it is set aside and the case is remanded with direction to render judgment as on file except as corrected to accord with this opinion.

In this opinion SPEZIALE, C. J., HEALEY and GRILLO, Js., concurred.

PICKETT, J. (dissenting). There is no issue before the court as to the propriety of the trial court's order as to Attorney Flaherty, since the record indicates that Attorney Moller agreed that "Mr. Flaherty cannot be in the case, and he has been removed from the case." As far as the order is directed to Attorney Moller, I dissent.

The trial judge found that "[t]here is no evidence that Attorney Moller knew of Flaherty's past or that he acted improperly in any way." In view of this uncontradicted finding, the ruling disqualifying Attorney Moller is in my opinion not supported. The case of *Consolidated Theatres, Inc.* v. *Warner Bros. Circuit Management Corporation,* 216 F.2d 920 (2d Cir. 1954), relied upon by the trial court, concerned the propriety of an attorney who formerly represented the defendants bringing an action for a plaintiff against his former client. Here, Moller never represented Avco nor its insurer USAIG. To disqualify counsel who has not acted improperly would in my opinion result in substantial prejudice to Corporate Air.

Finally, I have difficulty with the order remanding the case. The trial court judgment ordered "that no information, idea, strategy, or technique

that was derived either directly or indirectly from Flaherty shall be passed on to successor counsel either directly or indirectly and that successor counsel shall not communicate with Flaherty or with anyone to whom Flaherty has given any information, ideas, strategy or techniques in regard to the present action."

The remand provides that, "[t]o the extent that the order provided Flaherty and successor counsel shall not communicate directly or indirectly with each other, it was justified. Beyond that, the restrictions imposed by the court could not be enforced without, at the same time, severely and unnecessarily hampering Corporate Air's ability to defend itself in the product liability litigation." If successor counsel may communicate "with anyone to whom Flaherty has given any information, ideas, strategy or techniques in regard to the present action," then the quarantine of Mr. Flaherty may well become one of form rather than substance.

Accordingly, I would find error and remand the case to affirm the order as to Attorney Flaherty but deny the motion to disqualify as to Attorney Moller.