[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR DISQUALIFICATION
The substituted complaint dated September 3, 1991, alleges in pertinent part as follows: on or about June 30, 1989, as part of an agreement by and among the plaintiff, defendants, and the Hartford Whalers Hockey Club Limited Partnership ("Hartford Whalers"), plaintiff became entitled to receive $7,900,000.00 from the Hartford Whalers for the sale of his rights in and to the Hartford Whalers Hockey Club Limited Partnership. By written guaranty dated June 30, 1989, defendant Richard H. Gordon and the Gordon Family Limited Partnership became jointly and severally liable to pay $1,900,000.00 to the plaintiff. Also by written guaranty dated June 30, 1989, Colonial Whalers Limited Partnership ("Colonial") became jointly and severally liable to pay $7,900,000.00 to the plaintiff. As of May 10, 1991 the amount due jointly and severally from defendants Richard H. Gordon and the Gordon Family Limited Partnership under the Agreement and their guaranty was $1,423,810.00, plus interest, and costs of collection. As of May 10, 1991 the amount due jointly and severally from defendant Colonial Whalers Limited Partnership under the Agreement CT Page 9625 and its guaranty was $4,423,810.00.
Richard H. Gordon and the Gordon Family Limited Partnership ("Gordon defendants") by way of defense claim they were induced to enter said guaranty upon the misrepresentation by the plaintiff as to the net worth of the principal obligor (Colonial); and the fact that there was a mistake in the terms of their Guaranty which caused said Guaranty to be inconsistent with their obligation under the principal agreement.
The Gordon defendants move for disqualification of Attorney Peter R. Huntsman and the law firm of Updike, Kelly 
Spellacy, P.C., with which Mr. Huntsman is associated, as counsel for the plaintiff. Said defendants claim that lawyers associated with that firm formerly represented them and the plaintiff jointly in a matter substantially related to this litigation. Thus they allege that the firm is in a conflict of interest under Rules 1.9 and 1.10(a) of the Connecticut Rules of Professional Conduct. They also claim that the former representation was further tainted by the Updike firm's failure, in violation of Rule 1.7(b) to consult with Gordon regarding the potential conflict resulting from the multiple-client representation.
Rule 1.9 of the Connecticut Rules of Professional Conduct states:
 A lawyer who has formerly represented a client in a matter shall not thereafter:
 (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
 (b) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.
Rule 1.10(a) states:
 (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2. CT Page 9626
Rules 1.7(b) states:
 (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
 (1) The lawyer reasonably believes the representation will not be adversely affected; and
 (2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
In 1988 Richard H. Gordon, Gordon Family Limited Partnership ("Gordon") and Donald G. Conrad ("Conrad") began negotiations to purchase a controlling interest in the Hartford Whalers Club ("Whalers"). Gordon and Conrad were jointly represented in that transaction by Attorneys David E. Sturgess and Paul L. McCormick, both associated with the firm of Updike, Kelly Spellacy ("Updike"). (Defendant's Exhibit 1). Sturgess also prepared a draft of a side agreement to be signed by Gordon and Conrad at the closing (Defendant's Exhibit 2). Sturgess consulted with Gordon and Conrad on the side agreement before it was reduced to final form. Paragraph 6 of said side agreement provided that ". . . no party shall disclose the existence of the contents of this Agreement without the prior written consent of the other parties hereto."
Attached to the draft of the side agreement (Defendant's Exhibit 2) is a memorandum prepared by Sturgess which summarized decisions made by Gordon and Conrad at an August 10, 1988 meeting concerning a Chinese auction. Sturgess consulted with Gordon before the side agreement was reduced to final form. Sturgess also consulted with both parties in regard to the master agreement (Defendant's Exhibit 3) wherein Conrad and Gordon purchased their interest in the Whalers. The master agreement was drafted by the law firm of Hebb Gitlin and signed by Conrad and Gordon after consultations with and advice received from attorneys at Updike. The side agreement drawn up by Updike was incorporated into the master agreement.
As further evidence that Updike represented both CT Page 9627 Conrad and Gordon during the negotiations leading up to the master agreement, the Hartford Whalers sent a letter dated August 1, 1988 to John Ziegler, Jr., President of the National Hockey League in which he set forth some of the terms by which the transaction would be structured (Defendant's Exhibit 8). A copy of said letter was sent to "counsel to Messrs. Conrad and Gordon, Paul L. McCormick, Esq., Updike, Kelly Spellacy."
On August 25, 1988 Sturgess delivered a letter to Conrad and Gordon setting forth an agreement reached regarding the structure of the general partners and proposing that Updike would form corporations for each of them. (Defendant's Exhibit 4). Sturgess received information from Gordon that influenced the ultimate structure of the general partners.
On September 2, 1988 Sturgess sent a letter to Conrad and Gordon which contained financial matters in regard to the purchase of the partnership interest. (Defendant's Exhibit 5). The information was the product of discussions with Gordon and/or Conrad.
On September 9, 1988 Sturgess wrote to Conrad and Gordon in which he enclosed a "Sources and Uses" statement for the closing. (Defendant's Exhibit 6). This reflects a discussion with Gordon in regard to financial information. Although Attorney Howat was at some point an attorney for Mr. Gordon, he did not receive copies of Exhibits 1, 2, 4, 5 or 6.
During Sturgess' representation of Gordon and Conrad he had conversations with Gordon and/or Gordon's controller when Conrad was not present.
In 1989 a falling out between the parties took place, and Sturgess on behalf of Conrad initiated the Chinese option which Sturgess had drafted so that Conrad could purchase Gordon's interest in the Whalers. Sturgess knew at that time that Conrad had invited Colonial Realty to assist in the purchase.
Principals of Colonial Realty ("Googel-Sisti:") had agreed with Conrad to finance his purchase of the Gordon interests and in exchange Conrad had agreed, if possible, to give them, through what eventually became Colonial Whalers, a portion of his interest in the partnership. (Sturgess Affidavit Paragraph 9).
According to Sturgess, Gordon refused to abide by his contractual obligation to transfer his interests in the partnership to Conrad. (Said contractual obligation having been drawn up by Sturgess on behalf of Conrad and Gordon in 1988). CT Page 9628
Extensive negotiations ensued between Gordon (represented by Attorney Robert Caporale), Googel-Sisti (represented by Attorneys Preston Harding and Mark Svonkin), and Conrad (represented by the Updike firm). As a result of these negotiations Gordon, Googel-Sisti, and Conrad agreed that Conrad would sell his interest in the partnership to Colonial-Whalers, and Gordon would become managing partner of the partnership. A document was drawn up by the Updike firm indicating the agreement of the parties. It was in the form of an amended and Restated Partnership Agreement of the Partnership and ancillary agreements, dated as of June 30, 1989. The 1989 Agreement was structured as an amendment to the 1988 Agreements.
It is the 1989 Agreement and Gordon's alleged violations of same which is the subject of this lawsuit.
After an extensive hearing, the court finds that the Updike Kelly firm should be disqualified from representing Conrad in the present case for the following reasons:
1. One or two partners in said law firm represented Gordon in the negotiations leading up to the signing of the Master Agreement whereby Conrad and Gordon purchased an interest in the Whalers.
2. At least one partner consulted with Gordon and/or his controller in the negotiations leading up to said purchase.
3. Attorney Sturgess drew up the 1988 Chinese option agreement when he represented Gordon and Conrad and has stated that Gordon violated the terms of that agreement.
4. When it was determined that Gordon, Googel-Sisti, and Conrad agreed that Conrad would sell his interest in the Partnership, Sturgess prepared an Amended and Restated Partnership Agreement. (This was an amendment to the 1988 agreement wherein Conrad and Gordon were both represented by Sturgess). The court does not believe it is possible to separate the negotiation, drafting and execution of the 1988 agreement from the dispute that has grown out of the amendments to that agreement.
5. Attorney Sturgess formed corporations for Conrad and Gordon all in connection with the Whalers transaction.
6. Attorney Sturgess discussed Gordon's finances with Gordon and his controller .
7. Gordon claims that he was induced to enter into the guaranty upon the misrepresentation by Conrad as to the net CT Page 9629 worth of Googel-Sisti. In this regard, Gordon contemplates filing a counterclaim, and an attorney from the Updike firm may be called to testify.
In summary, it is the court's opinion that in 1988 lawyers associated with the Updike firm represented Gordon and Conrad jointly in a matter substantially related to the present litigation. That firm's continued representation of Conrad creates a conflict of interest in violation of Rule 1.9 and 1.10(a) of the Rules of Professional Conduct. Although Gordon and Conrad consented to the joint representation in 1988, and were advised that a conflict might occur in the future, that does not mean that Updike should continue to represent Conrad against Gordon now that a conflict has in fact arisen. Gordon has not consented to that. "An attorney should be disqualified. . . if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior litigation. . . Before the substantial relationship test is applied, however, the moving party must prove that he had in the past enjoyed an attorney-client relationship with the attorney sought to be disqualified in order to show that the attorney was in a position in which he could have received information which his prior client might reasonably have assumed would be withheld from his present client. . ." State v. Jones,180 Conn. 443, 445-450; Goldenberg v. Corporate Air, Inc.,189 Conn. 504 (1983). The court finds that during the 1988 representation of Gordon, Updike's attorneys could have received information which Gordon might reasonably have assumed would be held in confidence.
Gordon's prior representation by Sturgess and McCormick is imputed to Huntsman and the entire Updike firm by the terms of Rule 1.10(a). Thus, each lawyer in the Updike firm is bound by the duties that Sturgess and McCormick owed Gordon. William v. Warden, 217 Conn. 419, 432 n. 5.
Violations under Rules 1.9(a) and 1.7(b) are sufficient to merit disqualification of the Updike firm, but there is also a likelihood of a violation of Rule 1.9(b) which states: "A lawyer who has formerly represented a client in a matter shall not thereafter . . . [u]se information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known." It is not clear whether or to what extent information that Gordon intended to be kept confidential has been used in the preparation of this litigation.
Accordingly, the defendants' motion to disqualify the Updike firm from representing Conrad in the present litigation CT Page 9630 is granted, and all lawyers in said firm are prohibited from consulting with replacement counsel or disclosing any information, documentary or otherwise, obtained from Gordon during the course of the 1988 representation.
FRANCES ALLEN SENIOR JUDGE