[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff is lessor under a commercial lease pursuant to which defendant occupies premises at 211 Riverside Avenue in Bristol. Plaintiff brought this eviction for failure to pay rent for four weeks, for failure to pay annual real estate tax increases and for violation of state and local fire codes. Defendant admits the failure to pay rent for the weeks in question and failure to pay the tax increases, but denies the failure to comply with the fire codes. Defendant asserted as special defenses plaintiff's failure to fix a leaking roof and to maintain the heating and air conditioning unit in working order rendering the premises untenantable and waiver of plaintiff's right to collect the tax increases.
The evidence established that prior to January, 1989 the heating and air conditioning units were not working properly. Ms. Mariotti claimed that the tenant did not complain to her. In November, 1988 the Bristol Health Department notified her of lack of heat on the premises. Although the heating contractor had worked on the unit since 1985 and had recommended replacement of it in January, 1988, he told the tenant of his recommendation, not the landlord. Ms. Mariotti also testified that New Britain Roofing had replaced the roof in the spring of 1986. While she was aware that there was some leakage, she was unaware of the extent of the problem. In 1988, when she was told of leaking, CT Page 10938 she tried to get in touch with New Britain Roofing but could not reach them. In May, she hired Coty Roofing to do repairs. Judging by the photographs, the water leaks have done substantial damage to the premises. While Ms. Mariotti was on the premises occasionally to chat with Matt Damiano, she testified she was not aware that defendant was unable to use portions of the premises because of water damage.
Plaintiff also presented evidence that, prior to the date of the hearing, there had been a stove on the premises. The Deputy Fire Marshall testified that it was not in use when he inspected in March, and that it was not on the premises when he inspected the morning of the hearing. Plaintiff's nephew who owns Kenmore Cleaners which is located next door to the subject premises testified that while he did not see cooking on the premises, he had found grease on his plastic bags and offered to install exhaust ventilation fans. When he mentioned the problem with cooking buffalo wings to Matt Damiano, the problem ceased.
With regard to the real estate taxes, Ms. Mariotti testified that the reason she did not contact defendant for payment of their share of real estate taxes from 1982 to 1987 was because she herself was late in paying her taxes and did not feel it fair to press or bill them. Defendant did refuse to pay the taxes in 1982 because of problems with the roof and the heating and air conditioning unit. Indeed, it was not until September, 1987 that she contacted defendant regarding the 1985 tax bill.
Defendant has admitted its failure to pay rent for one week in October, 1987 and three weeks in February and March, 1988. It argues that since the lease calls for abatement in rent while the premises are untenantable, and since the heating system was inoperable until replaced in January, 1989, no rent is due. The lease provides:
 . . .in case the building . . . hereby leased shall be partially damaged by fire or otherwise, the same shall be repaired as speedily as possible at the expense of the . . . Lessor; that in case the damage shall be so extensive as to render . . . the demised premises untenantable, the rent shall cease until such time as the building be put in complete repair . . . .
Defendant wrote plaintiff of problems with the heating and air conditioning system in February, 1988. In March, 1988, Shaffer Company notified plaintiff that a new system was needed. While defendant's witnesses testified that the temperature in the during the winter sometimes went down to 40 degree and that, CT Page 10939 the summer, temperatures sometimes reached 95 degree inside. While the court does not doubt that testimony, the withholding of rent does not appear to have been tied to those problems. Although the system was not replaced and functioning until December, 1988, rent was paid from mid-March on. While defendant claims the right to withhold rent due to its uncertainty that repairs would be accomplished, the court finds that explanation not credible.
The question of waiver of the right to collect increases in real estate taxes is more troublesome. Between September, 1982 and September, 1987, plaintiff made no efforts to collect the tax increases from defendant. The plaintiff testified that, as to 1980 through 1984, she did not feel it fair to seek payment from the defendant since she had not caught up on paying her taxes. In her letter to counsel, she stated that she had not billed the defendant. Under the terms of the lease, lessee is to pay three-fourths of the increase in taxes over the list of October, 1979 within 30 days after lessor gives proof of increase in writing, including a copy of the bill. Ms. Mariotti did acknowledge that as to the bills for 1985 and 1986, she was not paid because of damage to the premises. She sent a demand for the 1985 taxes in 1987. Waiver is the intentional relinquishment of a known right and may be implied from acts or conduct. Goldenberg v. Corporate Air, Inc., 189 Conn. 504, 510
(1983). The evidence establishes the plaintiff was aware of the lease terms regarding tax increases. For her own reasons, she chose not to pursue her rights under the lease from 1982 to 1987. Her conduct, particularly in light of the knowledge of the problems with the roof and leaks prior to repairs in 1986, is strong evidence of waiver of her rights prior to that asserted in 1987, $523.99 due on the 1985 tax bill. While defendant may have been justified in withholding that payment because of insecurity, see Conference Center Ltd. v. TRC,189 Conn. 212, 226-227 (1983), that justification disappeared after December, 1988.
Since plaintiff has proved its case under the first count and, in part, under the second count, judgment for possession should enter.
SUSCO, J.