STATE BAR ASSOCIATION OF CONNECTICUT ET AL. *v.*
THE CONNECTICUT BANK AND TRUST COMPANY

STATE BAR ASSOCIATION OF CONNECTICUT ET AL. *v.*
HARTFORD NATIONAL BANK AND TRUST COMPANY

WYNNE, C. J., BALDWIN, DALY, KING and MURPHY, Js.

Argued February 13—decided April 15, 1958

*Wesley A. Sturges,* with whom were *Hadleigh H. Howd* and, on the brief, *Fleming James, Jr.,* for the

appellants (plaintiffs) ; with him also was the plaintiff *David H. Jacobs,* pro se.

*Horace E. Rockwell,* with whom was *Cyril Coleman,* for the appellees (defendants).

*F. Trowbridge vom Baur,* of the District of Columbia bar, with whom, on the brief, were *Thomas J. Boodell,* of the Illinois bar, *E. N. Eisenhower,* of the Washington bar, *Melvin F. Adler,* of the Texas bar, and *Andrew Hourigan, Jr.,* of the Pennsylvania bar, as amicus curiae.

DALY, J.  These two appeals were combined by order of the trial court pursuant to the provisions of § 382 of the Practice Book.  The plaintiffs alleged in each complaint that the defendant corporation named therein was, and for a long time had been, unlawfully practicing law in this state in violation of the common law and §§ 7638[1] and 7641[2] of the Gen-

---

[1] "Sec. 7638.  ADMISSION OF ATTORNEYS.  The superior court may admit and cause to be sworn as attorneys such persons as are qualified therefor, agreeably to the rules established by the judges of said court; and no other person than an attorney, so admitted, shall practice law or plead at the bar of any court of this state, except in his own cause; and said judges may establish rules relative to the admission, qualifications, practice and removal of attorneys."

[2] "Sec. 7641.  PRACTICE OF LAW BY PERSONS NOT ATTORNEYS.  No person who has not been admitted as an attorney under the provisions of section 7638 shall practice law or appear as an attorney at law or as attorney and counselor at law for another, in any court of record in this state, or make it a business to practice law, or appear as an attorney and counselor at law for another in any such court, or make it a business to solicit employment for a lawyer, or hold himself out to the public as being entitled to practice law, or assume to be an attorney or counselor at law, or assume, use or advertise the title of lawyer, or attorney and counselor at law, or attorney at law, or counselor at law, or attorney or counselor or attorney and counselor or equivalent terms, in such manner as to convey the impression that he is a legal practitioner of law or in any manner

eral Statutes and in contempt of court. They sought injunctions restraining each defendant from engaging in any and all of the acts and practices alleged and judgments declaring whether those acts and practices, singly or in combination, constituted the unlawful practice of law and violations of the statutes. The court found all the issues except one for the defendant in each case. The plaintiffs have appealed from the judgments.

The defendant The Connecticut Bank and Trust Company is a state bank and trust company organized under the laws of this state and has its principal office and place of business in Hartford. The defendant Hartford National Bank and Trust Company is a national banking association incorporated and organized under the laws of the United States. As such, it is doing business in this state and has a principal office and place of business in Hartford. It is authorized to exercise the same fiduciary powers as the defendant The Connecticut Bank and Trust Company. Neither defendant has been, nor can be, admitted to the practice of law in this state. During the year 1956 the defendant The Connecticut Bank and Trust Company had some 200 employees in its

advertise that he, either alone or together with any other person or persons, owns, conducts or maintains a law office, or office or place of business of any kind for the practice of law. Any person who violates any provision of this section shall be fined not more than two hundred and fifty dollars or imprisoned not more than two months or both. Any person who violates any provision of this section shall be deemed in contempt of court, and the superior court shall have jurisdiction in equity upon the petition of any member of the bar of this state in good standing or upon its own motion to restrain such violation. Nothing herein contained shall be construed as prohibiting a town clerk from preparing or drawing deeds, mortgages, releases, certificates of change of name and trade name certificates which are to be recorded or filed in the town clerk's office in the town in which such town clerk resides."

trust department. Five of them were members of the bar of this state and were employed as full-time trust officers. During the year 1956 the defendant Hartford National Bank and Trust Company had slightly less than 200 employees in its trust department. Seven of them were members of the bar of this state. Five of these seven were employed as full-time trust officers.

By advertising and the distribution of literature, each defendant disseminated without charge to its customers, prospective customers and the public, general information concerning (1) the application, scope and effect of various laws involved in estate planning, including federal income and gift tax laws, federal and state estate and succession tax laws, laws relating to trusts and laws relating to the administration and disposition of decedents' estates; (2) the complexities of federal and state taxes and various means of minimizing liability for them; and (3) the advantages and disadvantages of various means provided by law for the distribution of property, including the use of inter-vivos and testamentary trusts. The information was given by each defendant for the purpose of inducing persons to name it as executor or trustee in wills or trust agreements. In some of the advertising and literature it was stated that individuals should consult their own attorneys for advice on their specific situations and that all wills and trust agreements must be drawn by attorneys. Each defendant, acting through the officers of its trust department, discussed in conferences and correspondence with customers and prospective customers the matters enumerated above for the purpose of inducing them to name it as executor or trustee. Final or specific advice as to what an individual should do or as to what terms should be stated.

in a will or trust agreement was not given. Customers and prospective customers were urged to consult their own attorneys for advice on their specific situations. As far as was possible, the giving of definite answers to legal questions was avoided. No compensation for such conferences and correspondence was accepted.

Each defendant, through its trust officers, reviewed at the request of testators or settlors the provisions of wills and trust agreements, drawn by lawyers who were not employed by it, in instances where it had been named as executor or trustee or the testator or settlor had indicated that he was considering naming it executor or trustee. Such testators and settlors or their attorneys were advised of changes that ultimately might be necessary, proper or desirable. In all such cases, the trust officers urged the testators and settlors to consult their own attorneys. Neither defendant made any charge for these reviews. Everyone who indicated that he intended to name one of the defendants executor or trustee was informed that he must have the will or trust agreement drawn by his own attorney. It was not suggested that each testator or settlor name an attorney to represent the fiduciary on any legal matters that might arise in connection with the administration of the estate. Each was informed that the defendant in question was competent and had the right and authority to carry out through its employees the duties and activities imposed upon or required of a fiduciary.

The employees of the trust department of each defendant composed, drafted and filed in the probate courts petitions, accounts, inventories, lists of claims, and applications for the probate of wills, for widows' allowances, for the payment of its own

claims against estates it was administering and for approval and acceptance of its accounts and reports. Each defendant, acting in a fiduciary capacity, caused its appearance and representation to be made by its trust department employees at hearings and proceedings in the probate courts, including hearings and proceedings on applications for widows' allowances, for the admission to probate of wills in which it was named as executor, for the compromise of claims for or against the estates it was administering, for the adjudication of its claims against those estates, and for approval and acceptance of its accounts and returns. These practices of the defendants through their employees, some of whom were, and others were not, attorneys admitted to practice law in this state, were followed unless it was decided at some stage in a given administration that an uncertain or unclear legal issue was involved or that a controversy might arise. In the event of such a determination, each defendant might retain independent outside counsel for such legal services as it might indicate.

Each defendant's trust department employees prepared and filed federal and state tax returns and dealt with examiners of the internal revenue service and agents or attorneys of the state tax department in admitting, denying or compromising liabilities for taxes claimed to be due from estates that defendant was administering. If, however, it was considered that an uncertain or unclear legal issue was involved or it was known or expected that a controversy might arise, and the amount of taxes involved warranted it, each defendant was represented by independent outside counsel. Each defendant, in most instances in the course of its fiduciary administrations, retained independent outside counsel to rep-

resent it in matters involving real estate and to draw instruments pertaining to real property, only because it was deemed that such a retainer was necessary for the proper administration of estates. Trust officers of each bank, some of whom were, and some of whom were not, attorneys, had frequent meetings with tax attorneys representing the state to compromise claims arising out of the succession and transfer tax laws. The questions which arose were more difficult to solve than title searching problems. At these conferences, independent outside counsel were seldom present. Where the claim was contested in a probate court, however, each defendant was consistently represented by outside independent counsel. On questions of taxability, it was a common thing for the trust officers of the defendants to make decisions without consulting an attorney.

The court concluded that each defendant in performing the acts and carrying on the practices stated above was acting primarily for itself in the proper exercise of its fiduciary functions under existing statutes; that there is no valid distinction between acts performed by each defendant as a fiduciary through its salaried employees and the same acts performed through independent outside counsel retained by it; that each defendant, in giving general information to customers and prospective customers and in reviewing existing wills, did not engage in the unauthorized practice of law; that each defendant, in composing and drafting petitions, accounts, inventories, lists of claims and other papers which were filed in the probate courts, and in preparing and filing tax returns and appearing before state and federal tax authorities in connection with taxes claimed to be due from estates it was administering through employees, whether lawyers or laymen, did not en-

gage in the illegal practice of law or violate statutes; but that each defendant in appearing and being represented, in probate court proceedings in which a hearing is required by law or in which a hearing is had though not required by law, by employees who have not been admitted to practice law in this state did engage in the unlawful practice of law. The plaintiffs maintain that the court erred in reaching all of its conclusions. Their contention that the court erred in the last conclusion is based upon their claim that each defendant, in appearing and being represented by employees, even though attorneys, engaged in the unlawful practice of law.

We can properly turn to the memorandum of decision to ascertain the ground upon which the court acted. *Rogers* v. *Kinnie*, 134 Conn. 58, 61, 54 A.2d 487. In its memorandum the court said: "It is hard to conceive how a bank or trust company could exercise any of the powers given it by state and federal statute, if it could not engage in the acts and practices enumerated . . . . It would be strange indeed if the legislatures conferred upon it these powers in the face of a statute or common law rule which denied it the right to exercise them." The statutes referred to only empower banks or trust companies to act as fiduciaries. General Statutes § 5781, as amended by Cum. Sup. 1955, § 2648d; 40 Stat. 968, as amended, 12 U.S.C. § 248 (k). They do not permit a fiduciary to arrogate to itself the functions of an attorney. If, however, these statutes could possibly be interpreted as expressions of legislative intent to authorize corporations in acting as fiduciaries to do the things customarily done by attorneys, the futility of enacting such legislation would be obvious. The federal statute limits the powers granted to those not in contravention of

state or local law. Constitutional limitations upon the powers which may be granted by state statute are therefore limitations upon the powers granted under the federal statute. The portion of § 7638 of the General Statutes which provides that "[t]he superior court may admit and cause to be sworn as attorneys such persons as are qualified therefor, agreeably to the rules established by the judges of said court," can be construed only as a legislative recognition of the inherent right of the Superior Court, a constitutionally established tribunal, to promulgate rules for the admission of attorneys. "It should be borne in mind that no judicial power is vested by the constitution in the General Assembly, either directly or as an incident of the legislative power, and the General Assembly cannot confer it. Under the charter of Charles II, both the legislative and the judicial power were vested in the General Assembly; but it was one of the objects which the people had in view, in framing and adopting the constitution, to divest the General Assembly of all judicial power. To that end Art. 2 of the constitution provides that 'the powers of government shall be divided into three distinct departments, and each of them be confided to a separate magistracy, to wit: those which are legislative to one; those which are executive to another; and those which are judicial to another.' . . . In Art. 3 they say that the legislative power of the state shall be vested in the General Assembly. In Art. 5 they say the judicial power of the state shall be vested in the Supreme Court of Errors &c. as hereinbefore cited. Thus, while the entire legislative power is vested in the General Assembly, the judicial power is separated from it and vested in the courts 'as a separate magistracy.'" *Brown* v. *O'Connell,* 36 Conn. 432, 446.

Numerous statutes have been passed to aid the judicial department of each state in reaching a proper selection of those qualified for admission as attorneys to practice in the courts. "No statute can control the judicial department in the performance of its duty to decide who shall enjoy the privilege of practicing law." *Opinion of the Justices,* 279 Mass. 607, 611, 180 N.E. 725. Courts acting in the exercise of common-law powers have an inherent right to make rules governing procedure in them. *In re Appeal of Dattilo,* 136 Conn. 488, 492, 72 A.2d 50. The Supreme Court of Errors, established by the state constitution, likewise has the inherent power, independent of and despite any statute, to make rules governing procedure before it. Section 1 of article fifth of our constitution provides that "[t]he judicial power of the state shall be vested in a supreme court of errors, a superior court, and such inferior courts as the general assembly shall, from time to time, ordain and establish: the powers and jurisdiction of which courts shall be defined by law." "The judges of the Supreme Court of Errors and the judges of the Superior Court, respectively, constitute those courts. The judges of each court in their joint or separate action exercise the power of that court; each, equally with every other, represents in his official action the judicial power of the State vested in the court of which he is a member." *Mc-Govern* v. *Mitchell,* 78 Conn. 536, 547, 63 A. 433. All the courts of this state, except the Supreme Court of Errors and the Superior Court, have been established by the General Assembly under, and by the authority granted to it by, the constitution. By virtue of the provisions of § 27 of No. 651 of the 1957 Public Acts, the judges of the Supreme Court of Errors now have the power to adopt, promulgate,

and from time to time modify or repeal rules and forms regulating pleading, practice and procedure in judicial proceedings in the courts established by the General Assembly.

As stated in the finding, a great many legal problems of a complex nature arise in the fiduciary administration of decedents' estates. These include questions of domicil and who are heirs at law; valuation of stockholdings in certain corporations, of leasehold estates, and of remainder interests; decisions on what dividends and accrued interest are included in the inventory and to whom the household furniture belongs; determination of which of the claims against an estate are properly presented and of questions relating to statutes of limitation and the priority in order of payment of claims against an insolvent estate; decisions on whether a transfer was made in contemplation of death or was intended to take effect in possession or enjoyment upon death and whether to concede the taxability of the items involved; determination of what are allowable deductions under the succession tax law and what items are included in the computation of the tax; completion of federal estate tax returns, each of which contains many schedules, including those listing jointly owned property, marital deductions and transfers prior to death; and preparation of preliminary and final accounts, and the making of the necessary calculations, in the distribution of estates. Few, if any, estates do not have some problems of a legal nature. There is a considerable body of case law built up around the succession and transfer tax statutes of this state.

Prior to 1933 the prohibition of our statutes was primarily directed against the appearance in court of persons not admitted to the bar. Rev. 1930,

§§ 5343, 5345. In that year both of these sections were broadened by the addition of the provision that unauthorized persons should not "practice law." Cum. Sup. 1935, §§ 1627c, 1628c (Rev. 1949, §§ 7638, 7641). "There can have been but one purpose in adding these important words. That was to forbid the performance of any acts by persons not admitted as attorneys, in or out of court, commonly understood to be the practice of law." *Grievance Committee* v. *Payne*, 128 Conn. 325, 330, 22 A.2d 623. Consequently, the question for determination is whether each defendant, acting through its employees, performed acts, in or out of court, "commonly understood to be the practice of law."

The practice of law is open only to individuals proved to the satisfaction of the court to possess sufficient general knowledge and adequate special qualifications as to learning in the law and to be of good moral character. A dual trust is imposed on attorneys at law. They must act with fidelity both to the courts and to their clients. They are bound by canons of ethics which are enforced by the courts. The relation of an attorney to his client is pre-eminently confidential. It demands on the part of the attorney undivided allegiance, a conspicuous degree of faithfulness and disinterestedness, absolute integrity and utter renunciation of every personal advantage conflicting in any way directly or indirectly with the interests of his client. Only a human being can conform to these exacting requirements. Artificial creations such as corporations or associations cannot meet these prerequisites and therefore cannot engage in the practice of law. The practice of law consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces the giving of legal

advice on a large variety of subjects and the preparation of legal instruments covering an extensive field. Although such transactions may have no direct connection with court proceedings, they are always subject to subsequent involvement in litigation. They require in many aspects a high degree of legal skill and great capacity for adaptation to difficult and complex situations. No valid distinction can be drawn between the part of the work of the lawyer which involves appearance in court and the part which involves advice and the drafting of instruments. The work of the office lawyer has profound effect on the whole scheme of the administration of justice. It is performed with the possibility of litigation in mind, and otherwise would hardly be needed. It is of importance to the welfare of the public that these manifold customary functions be performed by persons possessed of adequate learning and skill and of sound moral character, acting at all times under the heavy trust obligation to clients which rests upon all attorneys. The underlying reasons which prevent corporations and associations, as well as individuals other than members of the bar, from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counselors at law outside of courts. *Opinion of the Justices,* 289 Mass. 607, 613, 194 N.E. 313.

The practice of law is not a lawful business except for members of the bar who have complied with all the conditions required by the rules. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a business in which a corporation may legally engage. As it cannot practice law directly, it cannot do so indirectly by employing competent lawyers to practice for it, since that would be an evasion which the law will

not tolerate. *Matter of Co-operative Law Co.,* 198 N.Y. 479, 483, 92 N.E. 15.

Each defendant, acting through its employees, in disseminating general information concerning the application, scope and effect of various laws and in reviewing wills and trust agreements was acting primarily for itself in obtaining or holding trust department customers. Those acts and practices did not constitute the practice of law. In performing other acts and in carrying on other practices, it was not acting primarily for itself; it was administering and settling the affairs of estates. The mere fact that it was not acting for itself in performing an act or acts in or out of court does not, however, compel the conclusion that such performance constituted the practice of law. As stated above, the decisive question is whether the acts performed were such as are "commonly understood to be the practice of law." *Grievance Committee* v. *Payne,* 128 Conn. 325, 330, 22 A.2d 623. The decision by a trust department officer or employee that no uncertain or unclear legal issue is involved, that no controversy is likely to arise and that independent outside counsel should not be retained would not legalize the performance of the acts by a trust officer or employee. The court erred in concluding as a matter of law that the drawing up of all of the various types of instruments drafted and composed by each defendant's trust department employees could not and consequently did not constitute the unlawful practice of law and also in concluding as a matter of law that each defendant's appearance and representation at probate court hearings by attorneys who were salaried employees could not and did not constitute the unlawful practice of law.

Upon the basis of the facts found, we cannot say

that the court erred in concluding that each defend-ant, acting by and through its trust department employees, lawyers or laymen, in preparing tax returns and dealing with and appearing before state and federal tax authorities in connection with taxes claimed to be due from estates administered by it did not engage in the unlawful practice of law. We do not hesitate to say, however, that if the record indicated that either the preparation of the tax returns or the matters dealt with involved tax law problems of a type such that their solution would be "commonly understood to be the practice of law," we would hold that the acts performed constituted the unlawful practice of law.

There is error in part in both cases, the judgments are set aside and the cases are remanded with direction to render judgments as on file except as modified to accord with this opinion.

In this opinion the other judges concurred.