******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ANDREW CIMMINO *v.* MARIA MARCOCCIA ET AL.
## (SC 20084)

Robinson, C. J., and Palmer, McDonald, Kahn and Blawie, Js.*

*Syllabus*

The plaintiff in error, M, filed a writ of error with this court, seeking reversal of the orders of the Appellate Court, the defendant in error, issued in connection with certain attorney misconduct by M. The first of those orders, which was issued after notice and a hearing, declared that M had exhibited a persistent pattern of irresponsibility in handling her professional obligations before the Appellate Court insofar as she failed to meet deadlines, violated the rules of appellate procedure, and filed a frivolous appeal. That order suspended M from the practice of law before the Appellate Court for a period of six months and further required, as a condition precedent to reinstatement, that M take certain remedial steps. One of M's clients in a separate action, W, subsequently filed a grievance against her, alleging certain misconduct arising from an appeal to the Appellate Court. The Chief Disciplinary Counsel thereafter sent a letter to the Chief Clerk of the Supreme and Appellate Courts indicating that M had entered into a written retainer agreement with W for the provision of certain legal services at the Appellate Court level. Specifically, the retainer agreement provided that M would review relevant trial documents and draft W's appellate brief, while another attorney, H, would argue W's appeal before the Appellate Court. M also had drafted a motion to file a late appeal in W's case that H submitted to the Appellate Court. In response to the letter from the Chief Disciplinary Counsel, the Appellate Court, without notice or a hearing, issued a second order clarifying that its first order had precluded M from providing legal services of any kind in connection with any Appellate Court matter until her reinstatement. In her writ of error, M claimed that the Appellate Court's second order constituted an unconstitutional ex post facto law because it retroactively prohibited conduct that was not addressed in the first order, that the Appellate Court engaged in the selective enforcement of attorney disciplinary rules when it issued its first order, and that the Appellate Court engaged in racially disparate and retaliatory treatment of minority attorneys, such as M, by issuing both orders. M also claimed that the Appellate Court's second order violated her federal constitutional right to due process because it retroactively prohibited conduct that was outside the scope of the first order and without prior notice or an opportunity to be heard. *Held* that M could not prevail on her claim that the Appellate Court's orders were unconstitutional, and, accordingly, M's writ of error was dismissed: the Appellate Court's second order did not constitute an ex post facto law because the text of the relevant constitutional provision limits the powers of the legislature and does not, of its own force, apply to the judicial branch of government; moreover, this court declined to review M's claims of selective enforcement and discriminatory and retaliatory treatment, as they were necessarily fact bound, and, therefore, this court was not the appropriate forum to address those claims in the first instance; furthermore, the Appellate Court acted within its discretion in issuing the second order and did not violate M's constitutional right to due process by retroactively prohibiting the conduct at issue because any reasonable attorney would have understood that the terms of the Appellate Court's first order, the unmistakable intention of which was to preclude M from providing any services at the Appellate Court level prior to reinstatement, prohibited M from proffering the retainer agreement signed by W and that undertaking such appellate representation was in defiance of that order, and, in the absence of the imposition of any additional sanction on M in the second order, the Appellate Court did not violate M's due process rights by issuing that order without prior notice or a hearing.

Argued December 19, 2018—officially released July 30, 2019

*Procedural History*

Writ of error from orders of the Appellate Court suspending the plaintiff in error from the practice of law before the Appellate Court for a period of six months and also precluding the plaintiff in error from providing legal services of any kind in connection with any Appellate Court matter until she files a motion for reinstatement and that motion has been granted, brought to this court. *Writ of error dismissed.*

*Josephine Smalls Miller*, self-represented, the plaintiff in error.

*Alayna M. Stone*, assistant attorney general, with whom, on the brief, was *George Jepsen*, former attorney general, for the defendant in error.

*Opinion*

BLAWIE, J. On December 9, 2014, after conducting an en banc hearing on an order to show cause, the defendant in error, the Appellate Court, issued an order suspending the plaintiff in error, Josephine Smalls Miller, "from practice before [the Appellate Court] for a period of six months" and barring her from representing "any client before [the Appellate Court] until she files a motion for reinstatement and that motion has been granted" (2014 order). On October 4, 2017, the Chief Disciplinary Counsel sent a letter to the Chief Clerk of the Supreme and Appellate Courts indicating that Miller had been retained to represent a client in an appeal before the Appellate Court. In response, on February 15, 2018, the Appellate Court issued an additional order, stating that it "hereby clarifies that [the 2014 order] precludes . . . Miller from providing legal services of any kind in connection with any . . . Appellate Court matter until she files a motion for reinstatement and that motion has been granted" (2018 order). Miller then filed the present writ of error, claiming that the 2018 order was an unconstitutional ex post facto law in viola- tion of the United States constitution[1] because it retro- actively prohibited her from engaging in certain con- duct. In addition, Miller claimed that the 2014 order was the result of the Appellate Court's selective enforce- ment of the rules of attorney discipline, and argued that both orders were the result of the court's disparate and retaliatory treatment of minority attorneys who pursue racial discrimination claims on behalf of their clients. After oral argument before this court, we, sua sponte, ordered the parties to submit supplemental briefs on the following issue: "Whether the Appellate Court's order of February 15, 2018, clarifying its order of December 9, 2014, violated [Miller's] constitutional right to due process?" We conclude that the 2018 order did not violate the ex post facto clause and that Miller's claims of selective enforcement and discriminatory and retalia- tory treatment are not reviewable by this court. We further conclude that the 2018 order did not violate Miller's constitutional due process rights because, as applied, that order did not prohibit her from engaging in conduct that was not also prohibited by the 2014 order. Accordingly, we dismiss the writ of error.

Many of the underlying facts are set forth in this court's previous decision in *Miller* v. *Appellate Court*, 320 Conn. 759, 761–68, 136 A.3d 1198 (2016). In sum- mary, after Miller, who is an attorney licensed to prac- tice law in this state, repeatedly failed to meet certain deadlines and to comply with the rules of appellate procedure in connection with three appeals that were pending before the Appellate Court, and also filed a frivolous appeal in a fourth case, the Appellate Court issued an order directing her to appear before an en banc panel of that court to show cause why she should

not be sanctioned.[2] Id., 761. After the show cause hearing, the Appellate Court issued the 2014 order, finding that Miller "has exhibited a persistent pattern of irresponsibility in handling her professional obligations before [the Appellate Court]. . . . Miller's conduct has included the filing of [a] frivolous [appeal] and the failure to file, or to file in timely and appropriate fashion, all documents and materials necessary for the perfection and prosecution of appeals before [the Appellate Court]." The Appellate Court ordered that Miller be suspended "from practice before [the Appellate Court] in all cases . . . for a period of six months," with the exception of one appeal then pending. It also barred her from representing "any client before [the Appellate Court] until she files a motion for reinstatement and that motion has been granted." The 2014 order further specified certain remedial steps for Miller to complete before she would be eligible to be considered for reinstatement. The Appellate Court also directed the Chief Disciplinary Counsel to review these matters and to take further action if appropriate.[3]

Miller then filed a writ of error in this court, claiming that the Appellate Court had abused its discretion in issuing the 2014 order imposing sanctions on her and referring her to the Chief Disciplinary Counsel without indicating the nature of the inquiry to be conducted. See *Miller* v. *Appellate Court*, supra, 320 Conn. 761, 779–80. This court rejected these claims. Id., 761. With respect to the claim that the referral to the Chief Disciplinary Counsel was improper, this court concluded that, "[a]lthough the order of referral could have been clearer, we do not understand it to be a request for an investigation into the specific conduct giving rise to this writ of error but, rather, a request for a determination of whether Miller's conduct before the Appellate Court was part of a larger pattern of irresponsibility in [her] handling of her professional obligations." Id., 780. This court further concluded that the Appellate Court had acted within its discretion. Id., 780–81. Accordingly, this court dismissed the writ of error. See id., 781.

It is also worth noting that, despite the long past expiration of the six month minimum period of suspension in the 2014 order, the record reveals that Miller has never filed a motion for reinstatement. Nor has she ever provided a personal affidavit, or presented any evidence to the Appellate Court that she has successfully completed or implemented any of the remedial practice measures specified in the 2014 order, all of which remain conditions precedent to any possible reinstatement to appellate practice.

Following the Appellate Court's referral, it came to the attention of the Chief Disciplinary Counsel that one of Miller's clients, Jasmine Williams, had filed a grievance complaint against Miller in 2017, alleging unethical conduct arising from an appeal to the Appel-

late Court. On October 4, 2017, the Chief Disciplinary Counsel sent a letter to the Chief Clerk of the Supreme and Appellate Courts, stating that "[i]t appears that . . . Miller may be in violation of the [2014 order], which ordered her suspended from practice before the [A]ppellate [C]ourt in all cases," with the exception of one. According to that letter, Miller had entered into a written retainer agreement with Williams on or about October 1, 2016. By the express terms of that retainer agreement, Miller agreed to "*provide legal services at the* [A]*ppellate* [C]*ourt level*, specifically reviewing of the relevant trial transcripts, documents and orders, and drafting of the appellate brief." (Emphasis added; internal quotation marks omitted.) In addition, the retainer agreement provided that another attorney, James Hardy, would argue Williams' case before the Appellate Court. At the time that the Chief Disciplinary Counsel notified the Chief Clerk of the Supreme and Appellate Courts, she did not provide a copy of her letter to Miller.

In response to the letter from the Chief Disciplinary Counsel, on February 15, 2018, without prior notice to Miller or an opportunity to be heard on the matter, the Appellate Court issued the 2018 order, which clarified its earlier order but imposed no additional sanctions on Miller. The 2018 order provides in relevant part: "The Appellate Court hereby clarifies that [the 2014 order] precludes [Miller] from providing legal services of any kind in connection with any . . . Appellate Court matter until she files a motion for reinstatement and that motion has been granted . . . ."

Miller then filed the present writ of error, seeking review of both the 2014 order and the 2018 order issued by the Appellate Court. In her brief to this court, Miller argued that (1) the 2018 order constituted an unconstitutional ex post facto law because it retroactively prohibited conduct that was not addressed by the 2014 order, (2) the Appellate Court engaged in the selective enforcement of attorney disciplinary rules when it issued the 2014 order, and (3) the Appellate Court engaged in racially disparate and retaliatory treatment of Miller when it issued both the 2014 order and the 2018 order.

After oral argument, this court, sua sponte, ordered the parties to submit supplemental briefs on the following issue: "Whether the Appellate Court's [2018 order] clarifying its [2014 order] violated [Miller's] constitutional right to due process?" In her supplement brief, Miller contended that the 2018 order violated due process because it retroactively prohibited her from engaging in conduct that was outside the scope of the 2014 order, and because she was not provided with any notice or opportunity to be heard before the Appellate Court issued the 2018 order. Miller further contended that the 2018 order "resulted in the addition of a fourth

count to the presentment that was already pending before the Superior Court in *Office of Chief Disciplinary Counsel* v. *Miller*, [Superior Court, judicial district of Danbury, Docket No. CV-17-6022075-S]. In fact, the presentment judge proceeded, after trial, to issue a one year suspension on this count."

In its supplemental brief, the Appellate Court contended that, to the contrary, the 2018 order did not violate due process because it merely reiterated what was already clearly apparent in the 2014 order, namely, that Miller was barred from representing clients in connection with appeals to the Appellate Court. In addition, the Appellate Court contended that there was no violation of due process because the 2018 order "imposed no new or additional sanctions . . . ." Specifically, the Appellate Court contended, the order "did not change the length of the suspension [from practice before the Appellate Court] or alter the requirements for the personal affidavit that must accompany the motion for reinstatement." We agree with the Appellate Court that the 2018 order did not violate Miller's right to due process because that order has not been improperly applied to any conduct that was also not clearly within the scope of the 2014 order. Having previously upheld the validity of the 2014 order in *Miller* v. *Appellate Court*, supra, 320 Conn. 781, this court sees no reason to revisit its earlier decision, except as it may bear on the resolution of the present writ of error. We also find the balance of Miller's other claims as to the 2018 order to be without merit.

We first address the claims that Miller raised in her initial brief to this court. With respect to her argument that the 2018 order was an unconstitutional ex post facto law because it retroactively expanded the scope of the 2014 order, we reject this claim. "The United States Supreme Court has observed [that], '[a]s the text of the [ex post facto] [c]lause makes clear, it is a limitation upon the powers of the [l]egislature, and does not of its own force apply to the [j]udicial [b]ranch of government.' . . . Nevertheless, 'limitations on ex post facto judicial decisionmaking are inherent in the notion of due process.' " (Citation omitted.) *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 805–806, 950 A.2d 1220 (2008), quoting *Rogers* v. *Tennessee*, 532 U.S. 451, 456, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001). Accordingly, Miller's claims as to the constitutionality of the 2018 order as retroactively expanding the scope of the 2014 order are more properly framed as possibly implicating her right to due process, rather than her right to be free from ex post facto laws.

With respect to Miller's claims that the Appellate Court engaged in the selective enforcement of the rules of attorney discipline and in racially disparate and retaliatory treatment when it issued both the 2014 order and the 2018 order, we conclude that this court is not the

appropriate forum in which to raise these fact bound claims in the first instance. It is well established that appellate courts do not decide pure issues of fact or try, or retry, cases on appeal. See *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 310, 112 A.3d 1 (2015); see also Practice Book § 72-1 (a) ("[w]rits of error for errors *in matters of law only* may be brought from a final judgment . . . to the Supreme Court" [emphasis added]).[4]

Having rejected these claims, we next address Miller's claim in her supplemental brief that the 2018 order violated her constitutional right to due process because the 2018 order retroactively expanded the scope of the 2014 order.[5] We begin with the standard of review. "Because a license to practice law is a vested property interest, an attorney subject to discipline is entitled to due process of law." (Internal quotation marks omitted.) *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 705, 669 A.2d 1202 (1996); see also *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 306, 627 A.2d 901 (1993) ("[a] license to practice law is a property interest that cannot be suspended without due process"). "It is well settled that, [w]hether [a party] was deprived of his [or her] due process rights is a question of law, to which we grant plenary review." (Internal quotation marks omitted.) *Commissioner of Environmental Protection* v. *Farricielli*, 307 Conn. 787, 819, 59 A.3d 789 (2013). As we have already noted, limitations on ex post facto judicial decisionmaking are inherent in the notion of due process. See *Washington* v. *Commissioner of Correction*, supra, 287 Conn. 805–806.

Any due process analysis must also recognize the unique character of the historical relationship between the bench and bar. Since the earliest days of the Connecticut colony, attorneys have been subject to judicial control. See *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 554–55, 663 A.2d 317 (1995). It is well established that the Judicial Branch has the inherent power to investigate Miller's professional conduct as an officer of the court. See *Grievance Committee* v. *Broder*, 112 Conn. 263, 273–74, 152 A. 292 (1930); see also Practice Book §§ 2-1 through 2-82. Like a formal disbarment proceeding, a suspension from practice before a court for a period of time "is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, 267 Conn. 1, 26, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). The Appellate Court therefore has a legitimate and continuing interest in determining whether Miller has the necessary professional competence to practice law before it. See, e.g., *Baird* v. *State Bar*, 401 U.S. 1, 7, 91 S. Ct. 702, 27 L. Ed. 2d 639 (1971).

Because Miller's claim requires us to construe the scope of the Appellate Court's orders, we next review the legal principles governing their construction. "The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . *Effect must be given to that which is clearly implied as well as to that which is expressed.* . . . The judgment should admit of a consistent construction as a whole." (Citations omitted; emphasis added; internal quotation marks omitted.) *Lashgari* v. *Lashgari*, 197 Conn. 189, 196–97, 496 A.2d 491 (1985).

As we have indicated, Miller's essential claim is that the 2018 order of the Appellate Court constitutes an unconstitutional *retroactive* prohibition of the conduct that was the subject of the October 4, 2017 letter from the Chief Disciplinary Counsel to the Chief Clerk of the Supreme and Appellate Courts and count four of the presentment action, conduct for which the trial court in the presentment action sanctioned Miller.[6] We therefore limit our review to the question of whether the conduct that gave rise to that letter and count four of the presentment action was clearly prohibited by the 2014 order of the Appellate Court. If it was, there can be no due process violation.

We note preliminarily that Miller makes no claim that the allegations in the letter from the Chief Disciplinary Counsel were untrue. Miller also does not claim that the related factual findings of the trial court in the presentment action with respect to her dealings with Williams and the appellate legal services that she provided pursuant to their retainer agreement were not supported by the evidence.[7] Rather, because she views her conduct as not being expressly prohibited by the terms of the 2014 order, she argues that it cannot constitutionally be sanctioned under the 2018 order. Because Miller relies on the trial court's findings and rulings in the presentment action in support of her claims, we may take judicial notice of the court file in that action. See, e.g., *Davis* v. *Maislen*, 116 Conn. 375, 384, 165 A. 451 (1933) (when court file was examined at request of party and no exception was taken, parties could not complain when court took judicial notice of file).

In its written memorandum of decision, the trial court in the presentment action found the following facts. After Williams' parental rights with respect to her two minor children were terminated by the Superior Court, Williams retained Hardy to file an appeal of that decision on her behalf with the Appellate Court. Even before Miller was formally retained by Williams, Miller also provided assistance to Hardy with Williams' appeal by

drafting an objection, dated September 22, 2016, to a motion to dismiss that appeal. The Appellate Court ultimately granted the motion to dismiss Williams' appeal. At or about the same time, Hardy referred Williams to Miller. The trial court credited Hardy's testimony at the presentment trial when he spoke of his reliance on Miller's appellate expertise. Hardy had told Williams that, "although [he had] handled some appellate matters previously, [such matters did not] make up a majority of [his] practice, and [he] thought, because of [Miller's] supreme knowledge with respect to appellate matters and her expertise and skill set, that she would be better suited at the very least to assist . . . in filing the appeal." (Internal quotation marks omitted.)

On October 1, 2016, Williams executed a retainer agreement that Miller had presented to her. The agreement provided in relevant part that Miller would represent Williams "with respect to the following: A juvenile court termination of parental rights appeal." (Internal quotation marks omitted.) The agreement further provided that Miller would "*provide legal services at the [A]ppellate [C]ourt level*, specifically reviewing of the relevant trial transcripts, documents, and orders, and drafting of the appellate brief. . . . Hardy will be responsible for oral argument of the case." (Emphasis added; internal quotation marks omitted.) The trial court in the presentment action credited Miller's testimony that she had orally advised Williams that "there were some restrictions on her ability to represent [Williams in] the Appellate Court." However, the trial court in the presentment action also concluded that these representations were "completely inconsistent with the express terms of the retainer letter, which made no reference whatsoever as to any limitations placed upon her by the Appellate Court. Such conflicting information made it impossible for Williams to make an informed decision regarding the respondent's representation of her."

After Williams executed the retainer agreement, Miller reviewed the trial court's decision in the termination of parental rights case and drafted a motion for reconsideration of the Appellate Court's ruling granting the motion to dismiss the appeal from that decision. Miller also advised Hardy and Williams that a motion for permission to file a late appeal should be pursued. She then drafted a motion dated December 6, 2016, and sent it to Hardy so that he could file it with the Appellate Court on his own letterhead.

Because Miller was barred by the terms of the 2014 order from filing an appearance with the Appellate Court on behalf of Williams, she received no notices regarding the status of the case but, instead, was required to rely on Hardy for such information. Thereafter, from late December, 2016, until early January, 2017, Miller left the country, and apparently her contact

with Hardy during that time frame was limited. Upon her return, she learned from Hardy that the Appellate Court had since denied the motion to file a late appeal. However, by that time, it was also too late to seek permission to file a certified appeal with this court from the judgment of dismissal.

On the basis of these facts, the trial court in the presentment action, *Shaban, J.*, concluded, in a well reasoned decision, that the Chief Disciplinary Counsel had established by clear and convincing evidence that Miller had violated the terms of the 2014 order of the Appellate Court. It further found that, in doing so, she had engaged in the unauthorized practice of law, in violation of rule 5.5 of the Rules of Professional Conduct.[8] In reaching this conclusion, the trial court in that action expressly stated that it was *not* relying on the language of the Appellate Court's 2018 order "clarifying" the 2014 order, "*as the facts are sufficient to establish a violation of the rules based on the language of the original* [*2014*] *order alone.*"[9] (Emphasis added.) As a sanction for Miller's violation of the 2014 order, the trial court suspended her from the practice of law in this state for a period of one year. This suspension was to run concurrently with suspensions imposed by the trial court under the first three counts of the presentment, which pertained to misconduct unrelated to the Appellate Court's orders.

We conclude that any reasonable attorney would have understood that the terms of the 2014 order prohibited Miller from proffering the retainer agreement signed by Williams and that undertaking such appellate representation was in defiance of that order. We also conclude that a reasonable attorney would have been aware of such impropriety in the absence of seeking prior reinstatement to practice before the Appellate Court, particularly in light of the facts and circumstances surrounding the issuance of the 2014 order. See *Lashgari* v. *Lashgari*, supra, 197 Conn. 196 ("[t]he interpretation of a judgment may involve the circumstances surrounding the making of the judgment" [internal quotation marks omitted]). The 2014 order clearly stated that Miller's "persistent pattern of irresponsibility in handling her professional obligations" before the Appellate Court had both wasted the time and resources of the court and opposing counsel, and "threatened the vital interests of her own clients . . . ." That "persistent pattern of irresponsibility" included Miller's failure to adequately "monitor her cases . . . and ensure timely compliance with [the] rules of procedure." Moreover, in one of the appeals underlying the 2014 order, Miller was similarly out of the country when a nisi order was issued by the Appellate Court, informing her that the appeal would be dismissed if she failed to comply with certain procedural rules. That appeal was, in fact, dismissed before she returned to Connecticut. See *Miller* v. *Appellate Court*, supra, 320 Conn. 765. The

Appellate Court asked Miller at the show cause hearing "what assurance she could provide the court that such lapses would not occur in the future, [and] Miller stated that, because of her limited resources as a solo practitioner, she could assure the court only that she would try to find someone to cover her practice on a pro bono basis if she were to travel again for an extended period of time." Id., 766.

By entering into a retainer agreement with Williams to "provide legal services at the [A]ppellate [C]ourt level," Miller was in violation of the terms of the 2014 order. Effect must be given to the circumstances surrounding the order, to that which is clearly implied and to that which was directly expressed by the Appellate Court. This court does not share the straitened and overly narrow view of the 2014 order being urged by Miller. Such an interpretation is unreasonable and will not avail to defeat the Appellate Court's intention when that order is read in the context of the attorney disciplinary proceedings that culminated in its issuance. The unmistakable intention of the 2014 order was to prohibit Miller from providing any legal services at the Appellate Court level.

"[T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct . . . ." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 267 Conn. 26. By trying to do indirectly what she could not do directly, Miller failed to make it sufficiently clear to either her client or to Hardy, who relied on her purported "supreme knowledge with respect to appellate matters," that she would *not* assume responsibility for monitoring the status of Williams' appeal. In that case, Miller thereby engaged in the very same "persistent pattern of irresponsibility" that she demonstrated in the four cases that were the subject of the Appellate Court's previous show cause hearing and the 2014 order. The risks to the client's interests inherent in this lack of clarity and oversight became a reality when, as she had done in connection with an earlier appeal that provided the basis for the 2014 order, Miller again left the country. She did so without first making arrangements with Hardy to ensure that he was aware of, and would be responsible for, complying with all applicable procedural rules and deadlines in Williams' appeal. Miller's failure in this regard worked to the detriment of her client, as it resulted in the loss of any opportunity for Williams to file a certified appeal with this court from the Appellate Court's dismissal of her appeal.

To the extent that Miller contends that Hardy should have known, and that she reasonably expected, that he would be solely responsible for monitoring the status of Williams' appeal and complying with all procedural rules and deadlines because he was the only attorney who had filed an appearance in the Appellate Court,

we disagree. Contrary to Miller's suggestion, this is not a case in which she was merely providing background legal assistance to a supervising attorney who was expressly acknowledged by the client to be the sole legal representative with respect to an appeal. Williams never viewed Hardy as having sole professional responsibility for the diligent prosecution of her appeal. Moreover, by suggesting that Williams retain Miller, the inference is also clear that Hardy never viewed *himself* as solely responsible for the diligent prosecution of that appeal. Rather, it is undisputed that Williams had specifically retained Miller to act *as her attorney* in connection with her appeal and that Hardy had recommended Miller to Williams because of her purported expertise in appellate matters.

Thus, Miller failed both to properly express and to reconcile the mutual expectations of two parties—her client, Williams, as well as those of Hardy. It should have been clear to Miller that both were relying on, or reasonably could have relied on, her determination as to what papers needed to be filed in connection with the appeal, and as to any applicable deadlines, notwithstanding the fact that she had not filed an appearance in the Appellate Court on Williams' behalf. The confidence manifested by Williams in hiring counsel to handle her appeal gave her, as the client, the right to expect a corresponding degree of diligence on the part of Miller. As the trial court noted throughout the presentment process, Miller "has not acknowledged any wrongful conduct and has taken no steps to address the issues that led to her suspension by the Appellate Court, despite being given a clear roadmap by that court on how to do so." This court finds that Miller assumed professional duties and responsibilities toward a client in a case before the Appellate Court, and that her dereliction of those duties and obligations worked to the detriment of her client's interests, wasting the time and resources of the Appellate Court and opposing counsel in the process. These are the very harms that gave rise to the 2014 order, the recurrence of which the Appellate Court sought to prevent by its issuance of that order, and by its further issuance of the 2018 order.

The judiciary maintains the inherent right to define what constitutes the practice of law. See *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 554–55; *State Bar Assn.* v. *Connecticut Bank & Trust Co.*, 145 Conn. 222, 232, 140 A.2d 863 (1958). In the present case, the Appellate Court acted well within its discretion to use the occasion of the referral from the Chief Disciplinary Counsel[10] to elaborate on its definition of what constituted the practice of law before it. In the absence of the imposition of any additional sanctions on Miller, the Appellate Court did not violate due process by issuing the 2018 order without any prior notice or a hearing.

The clear intent of the original 2014 order was *not* to allow Miller to continue to assume the representation of clients in appellate matters as long as her involvement remained sub rosa, and could be masked from the Appellate Court in the absence of an appearance. For Miller to contend otherwise merely highlights her ongoing and obdurate refusal to accept any personal responsibility for her conduct, and to acknowledge the adverse effects that her conduct has had on her own clients, the courts, and opposing counsel. Moreover, Miller has provided no proof that she has undertaken any of the necessary remedial measures specified in the 2014 order to ensure that such misconduct will not be repeated.

For the foregoing reasons, we conclude that Miller's representation of Williams in her appeal to the Appellate Court violated the 2014 order, as it fell within the scope of that original order suspending Miller from practice before that court. Accordingly, we reject Miller's claim that the 2018 order of the Appellate Court violated due process by retroactively prohibiting her from engaging in such conduct. Having also rejected Miller's other claims, we dismiss the writ of error.

The writ of error is dismissed.

In this opinion the other justices concurred.

* This case was originally argued before a panel of this court consisting of Chief Justice Robinson and Justices Palmer, McDonald, Mullins, Kahn, Ecker and Vertefeuille. Thereafter, Justices Mullins, Ecker and Vertefeuille recused themselves and did not participate in the consideration of the case. Judge Blawie was added to the panel and has read the briefs and appendices, and has listened to a recording of the oral argument prior to participating in this decision.

[1] The constitution of the United States, article one, § 10, provides in relevant part: "No state shall . . . pass any . . . ex post facto [l]aw . . . ."

[2] The four appeals that were the subject of the show cause order were *Addo* v. *Rattray*, Docket No. AC 36837, *Willis* v. *Community Health Services, Inc.*, Docket No. AC 36955, *Cimmino* v. *Marcoccia*, Docket No. AC 35944, and *Coble* v. *Board of Education*, Docket No. AC 36677. See *Miller* v. *Appellate Court*, supra, 320 Conn. 761. The Appellate Court ultimately dismissed all four appeals. See id., 768 (Appellate Court dismissed appeal in *Coble* as frivolous); id., 770 (Appellate Court dismissed appeals in *Addo*, *Willis*, and *Cimmino* as result of Miller's failure to comply with various procedural requirements).

[3] The 2014 order provides: "After reviewing . . . Miller's conduct in [*Coble* v. *Board of Education*, Docket No. AC 36677, *Willis* v. *Community Health Services, Inc.*, Docket No. AC 36955, *Cimmino* v. *Marcoccia*, Docket No. AC 35944, and *Addo* v. *Rattray*, Docket No. AC 36837], the Appellate Court has determined that . . . Miller has exhibited a persistent pattern of irresponsibility in handling her professional obligations before [the Appellate Court]. . . . Miller's conduct has included the filing of frivolous appeals and the failure to file, or to file in timely and appropriate fashion, all documents and materials necessary for the perfection and prosecution of appeals before [the Appellate Court].

"[Miller's] conduct before [the Appellate Court] has threatened the vital interests of her own clients while consuming an inordinate amount of [the Appellate Court's] time and her opponents' resources. . . . Miller has neither accepted personal responsibility for the aforesaid conduct nor offered [the Appellate Court] any assurance that such conduct will not be repeated, based upon either her commitment to improving her knowledge of appellate practice and procedure or her institution of changes in her law practice to monitor her cases more effectively and ensure timely compliance with [the] rules of procedure.

"It is hereby ordered that:

"1. [Miller] is suspended from practice before [the Appellate Court] in all cases, except for the case of [*Addo* v. *Rattray*, Docket No. AC 36837], effective immediately for a period of six months from issuance of notice of this order until June 9, 2015.

"2. After June 9, 2015 . . . Miller may not represent any client before [the Appellate Court] until she files a motion for reinstatement and that motion has been granted. The motion for reinstatement shall not be filed until after June 9, 2015. Any motion for reinstatement shall include a personal affidavit in which . . . Miller:

"A. commits herself to discharging her professional responsibilities before [the Appellate Court] in a timely and professional manner;

"B. provides documentary proof of successful completion of a seminar on legal ethics and a seminar on Connecticut appellate procedure;

"C. documents any other efforts since the date of this order to improve her knowledge of appellate practice and procedure; and

"D. offers [the Appellate Court] detailed, persuasive assurances that she has implemented changes in her law practice designed to ensure full compliance with the rules of appellate procedure including a written plan indicating what procedures she has implemented in her office to ensure her compliance with the appellate rules and procedures and to protect her clients' interests.

"3. After June 9, 2015, upon the filing and granting of a motion for reinstatement . . . Miller may resume the practice of law before the Appellate Court if she is otherwise qualified to practice law in the courts of this state.

"4. The [a]ppellate . . . clerk's office is directed not to accept for filing and to return any documents filed in violation of this order.

"5. If . . . Miller violates the provisions of this order she is subject to further sanctions.

"It is further ordered that these matters are referred to the Chief Disciplinary Counsel for review and further action as it is deemed appropriate."

[4] The Appellate Court also contends that these claims are barred by the doctrine of res judicata because Miller could have raised them in her previous writ of error challenging the 2014 order. See, e.g., *LaSalla* v. *Doctor's Associates, Inc.*, 278 Conn. 578, 590, 898 A.2d 803 (2006) ("claim preclusion prevents the pursuit of any claims . . . which were actually made or *might have been made*" in prior proceeding [emphasis in original]). The claims could not have been raised in that writ of error, however, for the same reason that they cannot be raised here, namely, because they involve issues of fact that are not within the authority of this court to decide in the first instance.

We note that, in the proceeding on her previous writ of error, Miller sought permission to file a supplemental reply brief raising the claim that the Chief Disciplinary Counsel and the Statewide Grievance Committee had engaged in discriminatory and retaliatory conduct in connection with various disciplinary proceedings against her. Although Miller made a passing reference to the "grave and unjust manner in which the Appellate Court . . . sought to sully the thirty-five year spotless reputation of the plaintiff in error," she did not raise any specific allegations of discriminatory or retaliatory conduct by that court. This court thereafter summarily denied the motion.

[5] Miller also contends that the Appellate Court violated due process by failing to provide her with notice and a hearing before issuing the 2018 order. See *Szymonik* v. *Szymonik*, 167 Conn. App. 641, 656–57, 144 A.3d 457 ("[i]t is a fundamental tenet of due process that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard . . . in sufficient time to prepare their positions on the issues involved" [internal quotation marks omitted]), cert. denied, 323 Conn. 931, 150 A.3d 232 (2016); see also *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 308, 627 A.2d 901 (1993) ("[b]efore discipline may be imposed, an attorney is entitled to notice of the charges, a fair hearing and an appeal to court for a determination of whether he or she has been deprived of these rights in some substantial manner" [internal quotation marks omitted]). The gist of Miller's claim,

however, is that the 2018 order was unconstitutional because it *retroactively* prohibited conduct that would otherwise have been permitted. If Miller were correct, that order would be unconstitutional regardless of whether she was provided with notice and a hearing. On the other hand, if the 2018 order has not been applied to prohibit or punish conduct beyond the scope of the 2014 order, there can be no constitutional violation, regardless of whether Miller was provided with notice and a hearing. Accordingly, the lack of notice and a hearing has no bearing on Miller's claims.

[6] Miller also contends that the 2018 order "severely hindered her ability to practice law, even beyond appellate practice," because, for example, it could be construed to bar her from filing a motion for articulation or an offer of proof in the trial court in order to ensure an adequate recording in the event of an appeal, from pointing out weak points in the evidence to appellate counsel, or from performing a title search for a party with a pending appeal in a foreclosure action. None of these hypothetical scenarios posited by Miller, however, accurately describes the conduct at issue in this proceeding.

[7] Miller has also filed an appeal from the judgment in the presentment action that is currently pending in the Appellate Court. *Office of Chief Disciplinary Counsel* v. *Miller*, AC 42395. As we have indicated, however, she has not claimed in the present case that she intends to challenge in that appeal the underlying factual findings of the trial court regarding her professional dealings with Williams. Rather, she claims only that the 2014 order did not prohibit those dealings. This court recognizes that our analysis and resolution of this proceeding may also be dispositive of one or more claims made by Miller in connection with her pending appeal of the presentment action. This unique procedural circumstance is, however, a necessary consequence invited by Miller herself. Having chosen to pursue a two-pronged legal challenge, i.e., having chosen to file both a writ of error challenging the 2018 order of the Appellate Court, in addition to a direct appeal of the trial court's judgment in the presentment action, it is clearly necessary for this court to revisit the 2014 order in the context of the 2018 order. In particular, it is necessary that we address the question of whether, as the trial court in the presentment action found, the 2014 order prohibited Miller from engaging in the course of conduct that gave rise to the 2018 order of the Appellate Court, the latter of which is the subject of this proceeding. We now resolve that issue against Miller.

[8] Rule 5.5 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction . . . ."

[9] The trial court in the presentment action also stated in its memorandum of decision that Miller acknowledged at trial that the 2018 order "did clarify the original order." The trial court in that action did not suggest, however, and our review of the trial transcript does not support a finding, that Miller had *conceded* at trial that the 2018 order was merely a clarification that did not alter the scope of the 2014 order. Rather, Miller argued that opposing counsel "seem[ed] to be suggesting that just because [Williams] had an appellate matter that I could not advise her on something that did not relate to the Connecticut Appellate Court. That's a real problem that I have with this clarification that came out on [February 15, 2018]." Thus, Miller was contending that the 2018 order was *not* simply a clarification of the 2014 order, but that it prohibited conduct that the earlier order did not prohibit. Indeed, the trial court in the presentment action expressly noted in its memorandum of decision that Miller contended that the 2014 order did not bar her from representing Williams in connection with her appeal because it "only prohibited her from *appearing* before the Appellate Court." (Emphasis in original.)

[10] To the extent that Miller contends that she was entitled to contemporaneous notice of the letter from the Chief Disciplinary Counsel to the Appellate Court, we also reject that claim. In carrying out her important professional oversight responsibilities in this particular context, the Chief Disciplinary Counsel acts not as a third party litigant, but as an arm of the court. See *Miller* v. *Appellate Court*, supra, 320 Conn. 780 (in carrying out duty to investigate allegations of attorney misconduct, attorney disciplinary "bodies act as an arm of the court" [internal quotation marks omitted]); see also General Statutes § 51-90 et seq.